**In re McGAW PROPERTY MANAGEMENT, INC., Debtor.**

**Bankruptcy No. SA 90–01069 JR.**

United States Bankruptcy Court, C.D. California.

Sept. 30, 1991.

Arnold M. Quittner, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for movant.

Alan M. Mirman, Michel, Cerny & Mirman, Santa Monica, Cal., for Inose Family Trust.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtor objected to a proof of claim (the "Claim") for $89,983.61, based on a promissory note (the "Note") given to the Inose Family Trust ("Inose"). At the April 29, 1991 hearing, I allowed attorney's fees to Inose under § 506(b) of the Bankruptcy Code (the "Code") in the amount of $30,001.12. I also granted debtor's motion for reconsideration and disallowed $10,000 of the principal amount of the Claim of $56,244.41, which I had previously allowed. Debtor now moves for reconsideration of

the award of attorney's fees to Inose under § 506(b) and requests attorney's fees as the prevailing party under California Civil Code § 1717 (the "Motion"). After hearing oral argument by counsel for the parties on July 25, 1991, I took the matter under submission to consider the interaction of § 506(b) and § 1717.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## STATEMENT OF FACTS

The Claim was filed as a secured claim against debtor's estate in the principal amount of $54,182.51, plus interest, for a total of $89,983.61. Debtor did not contest $44,182.51 of the principal,[1] leaving three issues for trial: (1) Whether an additional $10,000 principal, plus interest, should be allowed based on an alleged cash advance from Inose to debtor; (2) whether a $3,000 interest payment had been properly credited by Inose; and (3) whether the Claim could be amended to add $2,061.90 based upon a payment allegedly made by Inose to Mitsubishi Bank on behalf of debtor. At

the conclusion of the proceeding I ruled that debtor's principal obligation to Inose was $54,182.51, which includes the $10,000 advance; that debtor should be credited the $3,000 payment; and that the Claim could be amended to add the $2,061.90.

Debtor brought a motion for reconsideration of the award of $10,000 arguing that the burden of proof rested with Inose. I agreed with debtor's position and reduced the principal amount of the Claim to $44,-182.51 plus the $2,061.90. I also awarded Inose attorney's fees under § 506(b),[2] in the amount of $30,001.12.[3] Having prevailed on its motion for reconsideration, debtor now seeks through the Motion to have me (1) reconsider the attorney's fees previously awarded to Inose in prosecuting the Claim; (2) find that it is the prevailing party and award it attorney's fees and costs under § 1717; and (3) based on new evidence, credit debtor for a $2,000 interest payment.[4]

Debtor argues that it is the prevailing party because of the $15,061.90 at issue, Inose only prevailed as to $2,061.90. Accordingly, debtor should be awarded attorney's fees under § 1717, and Inose should be denied attorney's fees since any award to an oversecured creditor under § 506(b) must be made consistent with state law. Debtor seeks an award of $32,072 in fees and $2,390 in costs, as well as $5,473.50 for fees incurred by debtor's prior counsel.

## DISCUSSION

The amount of the Claim is determined by California law. As previously men-

---

1. Debtor had actually stated on the record in a deposition on 12/10/90 that he did not object to this principal sum. This amount represents advances that debtor admits accepting from Inose under the Note. Debtor signed an agreement, dated February 4, 1980, acknowledging this. Debtor's objection to the Claim cited lack of sufficient evidence to determine the validity of the principal amount and interest. Inose responded that the Claim was sufficient and did not request unmatured interest. Debtor rebutted on December 14, 1991 that "Debtor concedes receipt of the $44,182.51 ... denies receipt of the $10,000 recited in the note and asserts that the creditor's claim must be reduced by the amount of $19,833.33 ($10,000 principal and

nine (9) years ten (10) months at 10% interest— $9,833)."

2. Section 506(b) provides that "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees ... provided for under the agreement under which such claim arose." Debtor does not contest that Inose is oversecured.

3. Of this amount, $18,473 was incurred in connection with the Claim and Claim objection proceeding.

4. Inose does not contest this credit.

tioned, § 506(b) allows reasonable attorney's fees to an oversecured creditor. Section 1717, on the other hand, awards reasonable attorney's fees to the prevailing party whenever the underlying contract provides for payment of attorney's fees to one of the parties.[5]

■ Debtor argues that in order for attorney's fees to be awarded to an oversecured creditor under § 506(b), the court must determine whether the creditor has a right to attorney's fees under state law. In other words, assuming I would find that Inose was not the prevailing party, he would have no right to recover attorney's fees since § 1717 limits recovery to the prevailing party. The Ninth Circuit has held that "when state law and not federal bankruptcy law provides the rule of decision in a contested matter, the bankruptcy court will award fees to the same extent allowed under the governing state law." *Holiday Mobile Home Resorts v. Wood (In re Holiday Mobile Home Resorts)*, 803 F.2d 977, 979 (9th Cir.1986).[6] In an earlier case, the Ninth Circuit followed this same principle when it overruled the denial of attorney's fees by the bankruptcy court even though debtor prevailed on his counterclaim saying, "Moreover, the court should apply state law not merely in determining whether a breach of contract occurred, but also in deciding whether to award attorney's fees on the claim." *Merced Production Credit Association v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099 (9th Cir.1983). It is clear from these cases that, absent § 506(b), § 1717 should apply.

*In the Matter of 268 Ltd.*, 789 F.2d 674, 675 (9th Cir.1986), the Ninth Circuit held that § 506(b) preempts the state law pertaining to an award of attorney's fees to the oversecured creditor. The issue before the court was whether the bankruptcy court was required to determine the reasonableness of the fee request when state law did not impose such a limitation. *Id.* at 675. The plaintiff argued that it should get the fee that would be allowed under state law. In rejecting plaintiff's position, the court found the argument "untenable because it implicitly equates reasonableness with enforceability". *Id.* In finding that reasonableness and enforceability are not "coterminous", the court commented that "we cannot agree that by requiring that contractual fee agreements be reasonable Congress meant only that they must be enforceable under the law governing the enforcement of the contract." *Id.* at 676. The court further supported its position by pointing out that the legislative history "favors reading the statute as preempting the state law governing the reasonableness of fee provisions." *Id.*

The analysis of the court in *268 Ltd.* regarding the distinction between reasonableness and enforceability and the holdings in *Holiday* and *Sparkman* lend some support to debtor's contention that an oversecured creditor must have an enforceable right under state law to recover attorney's fees under § 506(b).

However, this argument ignores the statutory language of § 506(b). The Supreme Court has said on many occasions that reference must first be made to the statute, and if the meaning of the statute is clear,

---

**5.** California Civil Code § 1717 reads:

(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

.........................................

(b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract ... the party pre-

vailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

**6.** The court points out that the Supreme Court in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), held that property rights, created and defined by state law, are to be respected in bankruptcy absent contrary language in the Rules. In *Holiday*, the court found an entitlement to an award of attorney's fees based on its reading of Arizona statutory law. *Holiday*, 803 F.2d at 979.

the court should enforce the statute as written. See *United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).[7] Section 506(b) says that the oversecured creditor may get reasonable attorney's fees if the agreement so provides. It does not say that the right is dependent on state law. Section 506(b), therefore, establishes a federal right to reasonable attorney's fees for the oversecured creditor irrespective of state law. A review of the legislative history lends additional support to this view. The Senate version prevailed over the House version that had the limiting language "to the extent collectible under applicable law". Senator De Concini and Representative Edwards, the floor managers of the Act, stated that the House version had been rejected in favor of the Senate version, and that fee arrangements would be enforceable "notwithstanding contrary law". 124 Cong.Rec. 32,398, 33,997 (1978).[8] See also, *268 Ltd.*, 789 F.2d at 676. The Bankruptcy Appellate Panel addressed the issue saying, "[T]he language of § 506(b) does not provide a judge with the discretion to deny fees to an oversecured creditor. We agree that when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory." *In re Dalessio*, 74 B.R. 721, 723 (Bankr. 9th Cir.1987). Accordingly, I find that § 506(b) gives Inose a federal right to attorney's fees independent of § 1717.

■ The next issue is the reasonableness of Inose's request for attorney's fees. I previously awarded Inose $30,001.12 in attorney's fees. Of that amount, $18,473 represented fees related to prosecuting the Claim. It is this amount that debtor asks that I reconsider, based on my granting his motion for reconsideration regarding the $10,000 issue. Debtor argues that Inose is not the prevailing party and, therefore, he should not get any fees. As stated above, even if Inose is not the prevailing party, he can recover reasonable attorney's fees under § 506(b).

In *Dalessio*, the court established the test for determining what is "reasonable" under § 506(b). "Reasonableness embodies a range of human conduct. The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable." *Id.* at 723. Thus, the first step in applying the test is to determine what was at stake. Debtor disputed the receipt of $10,000, which, including interest, amounted to approximately $20,000. Debtor's demand that credit be given for a $3,000 interest payment, plus Inose's amendment to his claim adding the $2,061.90 payment meant that Inose had $25,062.90 at stake. To recover this amount, he spent approximately $18,000. His recovery of $2,061.90 is a minimal benefit in light of the cost. As the Ninth Circuit stated in *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 958, 959 (9th Cir.1991), the attorney to the creditors' committee did not have "free reign to run

7. The Supreme Court stated, "The task of resolving the dispute over the meaning of 506(b) begins where all such inquiries must begin: with the language of the statute itself.... In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' *Id.* 489 U.S. at 241, 109 S.Ct. at 1030.

8. The House and Senate Reports state:
Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees ... provided under the agreement under which the claim arose. These fees ... are secured claims to the extent the value of the collateral exceeds the amount of the underlying claim.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 356–357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854, 6312.
The Congressional Record further provides "If the security agreement between the parties provides for attorney's fees, it will be enforceable under title 11, notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c)." 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978).

up a tab without considering the maximum probable benefit", and the attorney has the "obligation to exercise billing judgment".[9] The cost benefit analysis here is way out of whack. Strong efforts should have been made to settle these matters before incurring these excessive legal costs. Neither I nor any of my colleagues were asked to participate in any settlement discussions to resolve these matters. I understand that it takes the willingness of both parties to have meaningful settlement discussions, but nothing in the record shows Inose's willingness to involve the court in resolving the matter without expensive litigation. I find this all-or-nothing approach unreasonable under the circumstances. Since this type of risk is what one might expect in a contingency matter, I am going to award attorney's fees along the lines of a contingency arrangement.[10] Based on the recovery of $2,061, Inose is awarded attorney's fees equal to 50 percent of the recovery or $1,030.95. When added to the attorneys fees of $11,578.12 for services unrelated to prosecution of the Claim, Inose is awarded $12,559.07.

■ Turning now to the request of debtor for attorney's fees, the first issue is whether § 506(b) precludes any award to debtor. My view is that it does not. I see no conflict in awarding reasonable attorney's fees to an oversecured creditor under § 506(b) and attorney's fees to the debtor, should the debtor have the right to attorney's fees under state law. See *Holiday Mobile Home Resorts*, 803 F.2d at 979. Therefore, in order for debtor to recover attorney's fees from Inose, he must show that he is the prevailing party and his fee request is reasonable.

■ With respect to the question of who prevailed, § 1717 says the prevailing party is the one who recovered the greater relief. As I previously indicated, the amount at issue was approximately $25,000. Of this amount, Inose recovered only $2,061.90. Debtor, therefore, is the prevailing party.

■ In order to recover a maximum benefit of $25,000, debtor seeks $34,462 for itself and $5,173.50 for its previous attorneys who worked on the matter. This makes no practical sense. I reemphasize that attorneys and their clients should be sensitive to the cost benefit relationship when prosecuting litigation. See *Estes & Hoyt v. Crake (In re Riverside–Linden Co.)*, 925 F.2d 320, 322 (9th Cir.1991). This matter should have been settled. Considering what was at stake, the fees incurred by debtor are excessive. I received no request from debtor to assist in settling this matter. Under the circumstances, settlement efforts should have taken priority. I, therefore, will calculate the attorney's fees for debtor the same way I did for Inose. Taking 50 percent of the benefit, I award debtor $11,500 in attorney's fees.

Debtor's counsel should prepare an order that reflects the findings of this court within 10 days of the entry of this memorandum opinion.

---

**9.** In *Puget Sound, Id.* at 959, the court set forth the considerations the attorney should make:

    (a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

    (b) To what extent will the estate suffer if the services are not rendered?

    (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

**10.** The Ninth Circuit in *Puget Sound*, 924 F.2d 955, 960, upheld the use of a contingency formula in determining the reasonable attorney's fee for creditors' committee counsel. The court stated that although the primary method for calculating fees is the "lodestar", the law does not mandate that approach especially in bankruptcy proceedings which are unique.