**In re ALPINE GROUP, INC., a Washington corporation, Debtor.**

**James T. TAKISAKI, Universal Management, Inc., and Marylin O. Winkler, Appellants,**

v.

**ALPINE GROUP, INC., Appellee.**

**BAP No. WW–92–1650–RMJ. Bankruptcy No. 90–08274.**

United States Bankruptcy Appellate Panel, Ninth Circuit.

Argued and Submitted on Jan. 22, 1993.

Decided March 29, 1993.

Margaret K. Dore, Seattle, WA, for appellants James T. Takisaki et al.

Christopher C. Meleney, Seattle, WA, for appellee Alpine Group.

Before RUSSELL, MEYERS, and JONES, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The bankruptcy court disallowed the post-petition portion of the creditor's application for attorney's fees under § 506(b). REVERSED and REMANDED.

## I. FACTS

Creditor–Appellant James T. Takisaki ("Takisaki") loaned the Debtor–Appellee Alpine Group, Inc. ("Alpine") $1.37 million as 100% financing for the purchase of unimproved real property known as Three Tree Point. The loan was secured by a first deed of trust on Three Tree Point, up to a principal amount of $1.37 million; a second deed of trust on property known as Olivia Court, up to a principal amount of $200,000; and a third deed of trust on a property known as Ridge Lane, up to a principal amount of $224,000. The loan documents contained a standard contract enforcement attorney's fees provision. An involuntary Chapter 11 [1] petition was filed against Alpine and an order of relief followed.

After receiving authorization from the bankruptcy court, Alpine sold Ridge Lane. Takisaki agreed to release his lien on Ridge Lane in exchange for a replacement lien on

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

the Olivia Court property, in a first position up to $424,000.

Alpine proceeded to complete the development of Olivia Court and obtained preliminary plat approval for that property. Final approval, however, required Alpine to complete certain improvements, including water, sewers, gutters, drains, streets electricity, sidewalks, and lot stakes.

On January 16, 1992 Alpine moved for authority to sell the Olivia Court property free and clear of liens. Alpine had accepted offers of approximately $1.9 million for the completed lots at Olivia Court. Takisaki moved for the allowance of a secured claim under § 506. A settlement was reached and a stipulated order was entered by the bankruptcy court on March 4, 1992. That order, *inter alia,* allowed Takisaki's secured claim except for the attorney's fees and costs incurred.

On March 19, 1992, Takisaki moved for the payment of attorney's fees and expenses to be paid out of the estate under § 503(a) and (b)(4), § 726(a)(1) and Bankruptcy Rule 2016(a) in the amount of $51,427.09. The bankruptcy court allowed only $1,220.00 in attorney's fees and $43.25 in costs, representing fees incurred in pre-petition services, but denied the balance of the application as post-petition services in an order based upon its oral ruling[2].

The basis of the bankruptcy court ruling was that pre-petition legal services were foreclosure related, and were "clearly provided for" in the loan contract clause regarding attorney's fees, but that post-petition services involved bankruptcy related issues which, citing Ninth Circuit cases, are not compensable, notwithstanding a contractual provision for attorney's fees.

The court also concluded that § 506(b)[3] is not applicable, and that the extent of the secured status of the creditor is determined at the time of the petition. The court found that at the time of the filing Takisaki was under-secured[4] and that he became over-secured only due to events occurring during the pendency of the case[5]. The "events" referred to in the ruling are the improvements leading to plat approval. Apparently the value of the Olivia Court property before plat approval was below the amount of Takisaki's lien. Once plat approval was obtained the property value exceeded the lien, ostensibly leaving Takisaki over-secured. The sales price stated in the motion to sell the Olivia Court property is $1.9 million, while the aggregate value of Takisaki's lien is $424,000.

Takisaki filed a notice of appeal, followed by a motion for reconsideration. The court denied the motion for reconsideration in an order entered on June 4, 1992. Takisaki

---

**2.** The transcript of the oral ruling, by request of the bankruptcy court, serves as the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(b). (Transcript of Hearing, April 21, 1992)

**3.** Section 506(b) reads:
(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

**4.** Further adding to the confusion in this appeal is that the court stated in its oral ruling that Takisaki was "unsecured" at the time of filing. From all indications, this appears to be a misstatement. From the context of the statement, the other statements in the oral ruling and the evidence in the record it appears that the court had in fact meant "under-secured."

Takisaki also filed an "Objection to Proposed 'Finding' on Secured Status" on May 4, 1992. It is unclear from the record if there was any ruling on this objection.

**5.** The bankruptcy court in its oral ruling stated as follows:
The argument has been made that Mr. Takasaki is a secured creditor and as such, pursuant to Section 506(b) of the Code, is entitled to his attorneys' fees.
In view of my prior conclusion, I further conclude that 506(b) is not applicable. At any rate, when this case was filed, Mr. Takasaki was unsecured. He only became over-secured due to something which occurred during the pendency of this case. I conclude that the status of the creditor as over-secured or under-secured is determined by his situation as of the date of filing, and not as to what occurs during the administration of the case.
(Transcript of Hearing, April 21, 1992)

filed a second notice of appeal on June 12, 1992. We REVERSE and REMAND.

## II. ISSUE

Whether the court abused its discretion in disallowing the portion of Takisaki's attorney's fees representing post-petition services.

## III. STANDARD OF REVIEW

■ Bankruptcy court determinations regarding attorney's fees are reviewed for an abuse of discretion or erroneous application of the law. *In re Riverside–Linden Investment Co.*, 945 F.2d 320, 322 (9th Cir.1991); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985). Findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo*. *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991); *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir.1986); Federal Rule of Bankruptcy Procedure 8013.

## IV. DISCUSSION

A. *Post-petition fees pursuant to contract clause bankruptcy-related actions are compensable from the sale proceeds of the collateral if required elements of § 506(b) are met.*

The bankruptcy court incorrectly disallowed Takisaki's request for post-petition attorney's fees. The court reasoned that, according to Ninth Circuit law, "notwithstanding a contractual provision for attorneys' fees, such fees are not allowable when litigating rights and/or remedies available to a party under federal law, which includes the bankruptcy code." *See In re Fobian*, 951 F.2d 1149 (9th Cir.1991), *cert. denied sub nom. Western Farm Credit Bank v. Fobian*, — U.S. —, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992); *In re Johnson*, 756 F.2d 738 (9th Cir.1985); *In re Fulwiler*, 624 F.2d 908 (9th Cir.1980); *In re Coast Trading Co.*, 744 F.2d 686 (9th Cir. 1984). The court in *Coast Trading* stated:

> [T]he question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law. Absent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract.

*Coast Trading*, 744 F.2d at 693.

However, these cases merely restate what is known as the American rule, that in absence of a specific statute awarding attorney's fees, each party bears its own costs in litigation. Here, however, there is a specific provision in the bankruptcy code that allows for the payment of attorney's fees. Section § 506(b) allows for "any reasonable fees ... provided for under the agreement...."

The Bankruptcy Appellate Panel has previously held that § 506(b) provides for the payment of an over-secured creditor's attorney's fees pursuant to an agreement by the parties:

> Although section 506(b) does not use the specific language of "attorney's fees," the legislative history "make[s] it quite clear that attorneys [sic] fees and costs that are agreed to by contracting parties are to be allowed an oversecured claimant regardless of contrary law."

*In re Salazar*, 82 B.R. 538, 540 (9th Cir. BAP 1987) (quoting *In re Carey*, 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981)). In *Salazar*, the Panel vacated a bankruptcy court order denying the allowance of attorney's fees under § 506(b) to an over-secured creditor for reasonable fees, which were provided for by contract, which were incurred in bringing a motion for relief from the automatic stay.

This Panel has also held that "when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory." *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987).

■ We hold that attorney's fees in this type of action may be allowed under § 506 provided that the requirements of § 506(b) are met. Whether or not these require-

ments were met in the case before us is another issue.

In *Salazar*, this Panel articulated four elements in order to recover attorney's fees under section § 506(b): 1.) there is an allowed secured claim; 2.) the creditor is over-secured; 3.) the fees are reasonable under the circumstances; and 4.) the fees are provided for under the agreement. *Salazar*, at 540.

The attorney's fee clause contained in the applicable promissory note is a standard contract enforcement clause [6].

We must remand for a determination of whether these elements are satisfied, specifically; whether the contract clause covers the fees requested in this action; whether Takisaki is a "prevailing party" under the clause; and whether the fees requested are reasonable.

B. *Takisaki's status as over-secured/under-secured.*

Also at issue is whether Takisaki is over-secured. The bankruptcy court held that the relevant date for determination of secured status was at the time the petition was filed. At that time, the Olivia Court property did not have plat approval and Takisaki's lien exceeded the value of the property. During the case, Alpine made the requisite improvements and plat approval was obtained. This resulted in an increased value in the property, evidenced by the ultimate sales price of $1.9 million.

■ In determining the secured status of a creditor under § 506(a), value is determined in light of the valuation's purpose, and the proposed disposition of the property:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.... *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 506(a) (emphasis added). *See In re Case*, 115 B.R. 666, 670 (9th Cir. BAP 1990).

■ Here, there was an actual sale. The offered price of $1.9 million is conclusive evidence of the property's value.

If an actual disposition is to occur, regardless of the purpose of the valuation, the value of the collateral should be based on the consideration to be received by the estate in connection with the disposition, provided that the court determines such consideration is fair and was arrived at on an arm's-length basis.

3 *Collier on Bankruptcy,* ¶ 506.04, at 506–27 (15th ed. 1993). The value of Takisaki's secured claim should have been determined by reference to the actual sale proceeds. Since the proceeds greatly exceed the extent of his combined lien, Takisaki is over-secured.

It would clearly be inequitable for the entire benefit of the increase in value to inure to the debtor where, as it appears in this case, the cost was far less than the post petition increase in value.

We hold that, under the circumstances of this case, the value of the collateral at the time of sale, subject to credit for the costs of the improvements made by Alpine, is the

---

**6.** The attorney's fee clause reads as follows:
9. ATTORNEY FEES: If this Promissory Note is placed in the hands of an attorney for collection and/or if any legal action, arbitration or other proceeding, including a non-judicial foreclosure, is commenced to enforce or interpret any provision of this Promissory Note, the prevailing party shall be entitled to an award of it's [sic] actual expenses, including without limitation, expert witness fees and attorney's fees, at the normal hourly rate for the particular attorney involved, and any and all disbursements on trial and on appeal. This paragraph shall constitute an instruction to any court involved in such suit or collection that such rate shall be deemed reasonable and conclusive proof for a trustee in a non-judicial foreclosure that the fees charged at the trustee's normal hourly rate are reasonable. The phrase "prevailing party" shall mean the party that obtains substantially the relief desired, whether by dismissal, default, summary judgment, settlement or otherwise.

appropriate benchmark for determining Takisaki's secured status.

## V. CONCLUSION

The bankruptcy court erred in disallowing the post-petition portion of Takisaki's application for attorney's fees incurred in litigating bankruptcy issues and in determining Takisaki's secured status at the time of petition. We REMAND for an appropriate determination pursuant to this decision. REVERSED and REMANDED.