## In re BOULDERS ON THE RIVER, INC., an Arizona corporation, Debtor-in-possession.

### Bankruptcy No. 692–64208–aerll.

United States Bankruptcy Court, D. Oregon.

July 15, 1994.

Wilson C. Muhlheim, Muhlheim, Palmer, Zennache'& Wade, Eugene, OR, for debtor-in-possession.

James C. Lancaster, Ater, Wynne, Hewitt, Dodson & Skerritt, Portland, OR, for creditor Gentra Capital Corp.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court on the debtor's objection to claim #3 of Gentra Capital Corporation (Gentra), formerly known as RT Capital Corporation and assignee of Pacific First Bank.

## BACKGROUND

The debtor, Boulders on the River, Inc., is the developer, owner, and operator of an apartment complex in Eugene, Oregon. Pacific First Bank (Bank) provided the capital for the construction of the project. On March 28, 1990, the debtor executed a note payable to the bank in the principal amount of $10,100,000 ("Boulders Note"), together with a trust deed, assignment of rents and security agreement. On June 8, 1990 Boulders executed a second promissory note

("Trails Note") to the bank in the principal amount of $10,650,000 together with similar security documents [1].

On November 8, 1990 both notes were modified. The Trails note principal was reduced to $1,500,000 and the Boulders note was modified to allow the Debtor to draw up to $300,000 in previously undisbursed loan proceeds. On July 30, 1991 both were modified a second time to change, among other things, the interest rates, payment terms, disbursement and payment schedules. Finally, on April 7, 1992 the notes were modified a third time, again to change the interest rates, maturity dates, disbursement and payment schedules. The pertinent language of both the Boulders Note and the Trails Note is identical; only the paragraph numbering is different.

The parties agreed that as of April 1, 1992 the debtor owed the following amounts:
Trails note:

Principal: $1,500,000.00
Interest: $ 168,177.32

Boulders note:

Principal: $10,060,115.59
($10,100,000 as of 6/30/92)
Interest: $ 683,405.49

The debtor filed its chapter 11 petition herein on July 21, 1992. Thereafter, the bank filed a proof of claim on the Boulders and Trails combined notes in the amount of $12,560,953.61 (including principal, interest, late charges, attorneys' fees and costs as of July 21, 1992). That claim has been assigned to Gentra.

The debtor's plan of reorganization, with some modifications, was confirmed by an order entered herein on April 14, 1993.[2] During the confirmation hearing, this court found that Gentra's claim was fully secured and that Gentra should be treated as an over-secured creditor. The debtor's confirmed plan of reorganization provides that Gentra's claim shall be paid, in full with interest at the rate of 9% per annum [3]. Equal monthly installments are to be paid on Gentra's claim based upon a 25 year amortization with a balloon payment due after seven years.

The present dispute between the parties concerns the amount of Gentra's claim which must be paid pursuant to the terms of the debtor's confirmed plan of reorganization described above. Gentra claims that it is entitled to pre-confirmation interest, at the default interest rate specified in its notes. The debtor contends that the interest rate should be restricted to the regular, non-default interest rate provided for in the notes. If a default rate of interest is applied, the parties disagree as to the appropriate starting date from which such interest rate should be calculated. In addition, the parties disagree as to whether or not Gentra may recover attorney's fees (and, if so, the appropriate amount thereof) as part of Gentra's claim.

## DEFAULT INTEREST RATE

The debtor contends that Gentra may not collect the default interest rate specified in the Boulders Note and the Trails Note because the default interest rate is an impermissible penalty. The debtor argues that such a penalty is not allowed under state (Oregon) law or under appropriate bankruptcy law. Gentra maintains that the default interest rate is enforceable under both state and federal law.

### Contract provisions.

Paragraph 3 of the Boulders note (paragraph 4 of the Trail's Note) provides, in part, as follows:

1. The "Trails" note relates to a second apartment project "The Trails at Mt. Scott" which the debtor never completed in Arizona.

2. The bank objected to confirmation of the debtor's plan of reorganization. After the debtor's plan was confirmed the bank appealed this court's order confirming the debtor's plan. By a judgment entered February 28, 1994, the United States Bankruptcy Appellate Panel of the Ninth Circuit affirmed this court's order confirming the debtor's plan of reorganization.

3. The appropriate interest rate to be paid on Gentra's claim was one of the matters which was litigated during the confirmation hearing in this case. The interest rate set forth above is the interest rate which the court found to be the appropriate rate of interest that must be paid to Gentra.

3. *Interest* ·

3.1 *Floating Rate.* The advanced, unpaid principal hereof shall bear interest from the date of advance or addition at a rate (the "Floating Rate") equal to one and one-fourth percent (1¼%) per annum higher than and varying daily with the Base Rate. The "Base Rate" is defined for the purposes of this Note as the "reference rate" of interest quoted from time to time on commercial loans by Security Pacific National Bank.

Paragraph 6 of the Boulder note (paragraph 7 of the Trails note) provides, in part, as follows:

6. *Security, Defaults and Remedies*

6.3. *Late Charges Default Rate....* If and so long as any default exists under this Note or any of the security granted to secure this Note, the interest rate of this Note, and on any judgment obtained for the collection of this Note, shall be increased from the date of default to a rate (the "Default Rate") equal to five percent (5%) per annum higher than and varying daily with the interest rate then in effect on this Note.

After all of the modifications to the Notes, the regular, floating rate of interest had been increased from the base rate plus 1¼ as described in paragraph 3.1 above to the base rate plus 2.75%, not less than 9.5%, retroactive to November 1, 1991.

Gentra contends that based upon the modifications, the valid, enforceable, default rate of interest is 14.5%. Although not conceding that the default rate may be applied, the debtor argues that if any default rate is applied it should be 13.75%.

The parties have stipulated that the principal and interest component of Gentra's claim will be the following:

1. $13,968,154.47, if this Court finds the default interest rate is 14.5% and default date is May 11, 1992;

2. $13,883,876.99, if this Court finds the default interest rate is 13.75% and default date is May 11, 1992;

3. $13,882,592.88, if this Court finds the default interest rate is 14.5% and default date is July 1, 1992;

4. $13,810,972.50, if this Court finds the default interest rate is 13.75% and default date is July 1, 1992; and

5. $13,411,964.17, if this Court finds the default interest rate cannot be imposed.

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 United States Code, unless otherwise indicated.

### Applicability of the Default Interest Rate under Bankruptcy Law.

Section 506(b) provides in pertinent part as follows:

To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The obvious tension here in applying § 506(b) is whether I am bound to apply the default interest rate that the parties agreed to when contracting, or whether I have the flexibility to balance the equities in determining the applicability of the contract default interest rate. *In re DWS Investments, Inc.,* 121 B.R. 845, 849 (Bankr.C.D.Cal.1990)

Section 506(b) has been considered by the Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In that case the Supreme Court held that the phrase in § 506(b) "interest on such claim" is not limited by the language which follows, "provided for under the agreement under which such claim arose." The court held that "interest" applied to non-consensual over-secured claims as well as consensual claims. The court further noted that the plain meaning of the statute should control except where a literal application of the statute would produce a result clearly at odds with the intentions of the drafters of the statute.

Notwithstanding the fact that the statute appears to treat interest differently than

"fees, costs or charges provided for under the agreement", some courts have held that § 506(b) requires that the court apply the contract rate of interest, *Bank of Honolulu v. Anderson (In re Anderson )*, 833 F.2d 834 (9th Cir.1987). Indeed, when faced with the same question facing this court, the court in *In re Skyler Ridge,* 80 B.R. 500 (Bankr. C.D.Cal.1987) held that the creditor could charge the post-default rate of interest. There, the court noted:

> This Court finds no authorization in section 506(b) to examine the reasonableness of the interest rate charged by the secured creditor. Section 506(b) contemplates the award of interest to an over-secured creditor at the contract rate, whatever that contract rate may be. Unlike the provision for fees, costs and charges in section 506(b), this section provides no federal law authorization to modify the contract rate of interest, whether the estate is solvent or insolvent.

> Section 506(b) also provides no federal inhibition on a contract that varies the interest rate based upon market conditions, default, or other factors. Any restriction on the contract rate of interest must thus come from state law, and not from bankruptcy law. 80 B.R. at 511.

More recent decisions from the courts in the Ninth Circuit have indicated, however, a much more flexible approach. In *In re Entz–White Lumber and Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988) the court held that a note that had matured prior to bankruptcy could be cured through a plan by the payment of arrearage and principal.

There the note provided that all obligations (including principal, interest, costs and fees) not discharged when due would bear interest at the greater of 150% of the base rate or 18%. The note became due on June 1, 1984 and was not paid. The debtor filed its chapter 11 petition on August 17, 1984. The creditor appealed the bankruptcy court's order confirming the debtor's plan of reorganization. The lender argued for the higher default rate of interest in calculating the interest arrearage. It maintained that as an oversecured creditor it was entitled, under § 506(b), to interest at the contract rate,

including the post-default interest rate. In rejecting this argument, the court said the that debtor had the right to cure meaning to rectify the default. Payment of interest at a rate higher than the pre-default rate would eliminate the benefits of cure.

> The more natural reading of sections 506 and 1124 is that the interest awarded should be at the market rate or at the pre-default rate provided for in the contract. 850 F.2d at 1343.

The footnote accompanying this sentence states that: "We continue, of course, to recognize bankruptcy courts' 'broad equitable discretion' in awarding post-petition interest." *Id.*

In *Florida Partners Corporation v. Southeast Company (In re Southeast Company )*, 868 F.2d 335 (9th Cir.1989) the court extended the rationale of *Entz–White* to pre-petition interest charges as well, analyzing both §§ 502(b) and 506(b). There, the court stated:

> Section 502(b) like § 506(b) provides no mechanism for awarding ... pre-petition interest at the post-default rate provided for in the note..... The rationale in our decision in *Entz–White,* although dealing expressly with section 506(b) also applies to section 502(b). To allow pre-petition interest at the post-default rate would completely eliminate the benefits of cure in this case, ... FPC's claims for pre-petition interest at the post-default rate were properly denied. 868 F.2d at 339.

Finally, in another decision from the Central District of California, *In re DWS Investments, Inc.,* 121 B.R. 845 (Bankr.C.D.Cal. 1990) the court expressly rejected the *Skyler Ridge* approach in favor of a more flexible standard. There, the court was concerned that, "A default rate of interest should not be a penalty. Rather, it should be a means for compensating the creditor for any loss resulting from the nonpayment of principal at maturity." 121 B.R. at 849.

Here, Gentra's predecessor did offer some testimony to show that the default rate of interest, contained in the notes, was designed to compensate the bank for losses arising from default. Such testimony was

offered by Stuart Davis a former Vice President of the bank and Robert Cox, an outside expert. This testimony was controverted by the testimony of James Miller who testified on behalf of the debtor. He testified that he had been informed by Mr. Davis that the default rate of interest was a penalty to induce borrowers to make timely payments. This court is not persuaded that the default rate of interest constitutes anything but a mere penalty.

Following the rationale of the courts in *Entz–White, Southeast Company* and *DWS Investments, Inc.*, this court concludes that it has the flexibility to determine the interest rate that should be applied to Gentra's claim, pre-confirmation. Accordingly, balancing the equities of the case, this court concludes that Gentra's claim should include pre-confirmation interest, at the pre-default or non-default rate. Gentra should not be allowed to charge the post-default or default rate of interest.

Based upon the stipulation of the parties, the principal and interest component of Gentra's claim should be fixed at $13,411,964.17 as of April 14, 1993, the date the debtor's plan was confirmed. Accordingly, this court need not decide the questions raised by the parties as to whether or not the default rate of interest would be enforceable under Oregon law.

### ATTORNEY'S FEES AND COSTS

*Allowance of Attorney's Fees and Costs.*

Gentra seeks, as part of its allowed secured claim, its attorney's fees and costs incurred herein by Ater, Wynne, Hewitt, Dodson & Skerritt (Ater, Wynne), Gentra's Oregon attorneys and Norling, Perry, Pierson & Kolsrud (NPPK), Gentra's Arizona attorneys. The debtor objects, contending that Gentra should be denied any attorney's fees and costs in this matter because the debtor, not Gentra, was the prevailing party. Gentra maintains that it is entitled to recover its attorney's fees and costs pursuant to § 506(b).

█ Pursuant to § 506(b) a creditor is entitled to recover attorney's fees if the following four elements are satisfied:

1.) [T]here is an allowed secured claim; 2.) the creditor is over-secured; 3.) the fees are reasonable under the circumstances; and 4.) the fees are provided for under the agreement.

*In re Alpine Group, Inc.*, 151 B.R. 931, 935 (9th Cir. BAP 1993). *See also, In re Dalessio* 74 B.R. 721 (9th Cir. BAP 1987); *In re Le Marquis Associates*, 81 B.R. 576 (9th Cir. BAP 1987) and *Jensen v. Marnie Manor, Ltd. (In re Marnie Manor, Ltd.)*, Civ. No. 93–868–JO, (D.Or. Dec. 12, 1993)

█ Here, the dispute centers on the third and fourth factors. Gentra maintains that it must show only that recovery of the attorney's fees and costs is provided for in the underlying agreement (Notes) and that they are reasonable.

The debtor argues that in order to determine whether "the fees are provided for under the agreement," this court must first determine whether or not Gentra was the prevailing party.

*Discussion.*

Paragraph 6.4 of the Boulders note (paragraph 7.4 of the Trails note) "Costs of Collection" provides that

Maker promises to pay all costs, expenses and attorneys' fees incurred by the holder hereof in the exercise of any remedy (with or without litigation), in any proceeding for the collection of the debt, in any trustee's sale or foreclosure of the Deed of Trust or the realization upon any other security securing this Note, in protecting or sustaining the lien or priority of said Deed of Trust or said other security, or in any litigation or controversy arising from or connected with this Note, the Loan Commitment, or any security for or guaranty of this Note. Said proceedings shall include, without limitation, any probate, bankruptcy, receivership, injunction, arbitration, mediation, or other proceeding, or any appeal from or petition for review of any of the foregoing, in which the holder hereof appears to enforce the Loan Commitment, collect this debt or protect its security for this Note. Maker shall also pay all of lender's costs and attorneys' fees incurred in connection with any demand, workout,

settlement, compromise or other activity in which Lender engages to collect any portion of this debt not paid when due or as a result of any other default of Maker. If a judgment is obtained thereon which includes an award of attorneys' fees, such attorneys' fees, costs and expenses shall be in such amount as the court shall deem reasonable, which judgment shall bear interest at the Default Rate from the date it is rendered to and including the date of payment to Lender.

O.R.S. 20.096(1) provides as follows:

In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and disbursements.

The debtor argues that O.R.S. 20.096.(1) modifies the contractual provisions between the parties, the two provisions must be read together. Gentra unsuccessfully opposed confirmation of the debtor's Chapter 11 plan of reorganization, and Gentra unsuccessfully prosecuted an appeal of the valuation decision in the Trails case. In addition, Gentra has prosecuted an appeal of this court's order of April 14, 1993 confirming the debtor's plan. Since Gentra has been largely unsuccessful in its efforts, it is the debtor who is the prevailing party, hence, Gentra should not be allowed any attorney's fees.

The debtor argues that an oversecured creditor must have an enforceable right under state law in order to recover attorney's fees under § 506(b). This argument ignores the language of § 506(b) and its legislative history.

The language of § 506(b) provides that the creditor shall recover any reasonable fees "provided for under the agreement under which such claim arose."

It does not say that the right is dependent on state law. Section 506(b) therefore, establishes a federal right to reasonable attorney's fees for the oversecured creditor irrespective of state law. A review of the legislative history lends additional support to this view.

*In re McGaw Property Management, Inc.* 133 B.R. 227, 230 (Bankr.C.D.Cal.1991).

The statute was enacted as part of the Bankruptcy Reform Act of 1978. Both the Senate and the House Reports stated that the provision "codifies current law" by entitling an oversecured creditor to fees. S.Rep. No. 95–989, 95th Cong. 2d Sess. 68, *reprinted in* 1978 USCCAN 5787, 5854; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 356–57, *reprinted in* 1978 USCCAN 5787, 6312. The version of the House bill reported out of committee contained the language "to the extent collectible under applicable law." The Senate bill contained the reasonableness limitation but omitted the reference to "applicable law." Congress enacted the Senate version of the bill. Although there was not a formal conference to work out the differences, Senator De Concini and Representative Edwards, the floor managers of the Act, both stated that the House version had been rejected in favor of the Senate version, and that fee agreements would be enforceable "notwithstanding contrary law." 124 Cong.Rec. 32,-398, 33,997 (1978) (quoted in *In the Matter of 268 Limited,* 789 F.2d 674 (9th Cir.1986)).

The Bankruptcy Appellate Panel has considered this question and decided that § 506(b) establishes a federal right to reasonable attorney's fees for an oversecured creditor irrespective of state law. In *In re Dalessio,* 74 B.R. 721 (9th Cir. BAP 1987). The court stated:

... [W]hen fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory. However, this allowance is limited by the reasonableness requirement in § 506(b). 74 B.R. at 723.

In *In re Johnson,* 756 F.2d 738 (9th Cir. 1985), the Court of Appeals addressed the question of whether a motion for relief from the automatic stay under § 362(d) is an "action on a contract" to which California law should be applied. There, a creditor brought a motion for relief pursuant to § 362(d)(1) to foreclose upon real property. The debtors successfully opposed the motion and the

bankruptcy court awarded attorney's fees to the debtors as the prevailing party under California's equivalent to O.R.S. 20.096, California Civil Code section 1717[4]. The Court of Appeals concluded that a motion for relief is not "an action on a contract". Accordingly, it concluded that the bankruptcy court should not have awarded attorney's fees to the debtors based upon the state statute.

In a later case, the Court of Appeals carefully analyzed the history of § 506(b) and held that the section preempts state law governing the availability of attorney's fees as part of a secured claim. *In the Matter of 268 Limited, supra.*

The interplay between California Civil Code, section 1717 and § 506(b) was again considered by the court in *In re McGaw Property Management, Inc.,* 133 B.R. 227 (Bankr.C.D.Cal.1991). There, as in this case, the debtor argued that in order for attorney's fees to be awarded to an oversecured creditor under § 506(b) the court must determine that the creditor was the prevailing party. The court did not agree.

The debtor finds some support for its position in the recent Bankruptcy Appellate Panel decision, *In re Alpine Group, Inc.,* 151 B.R. 931 (9th Cir. BAP 1993). After repeating the four required elements for an oversecured creditor to obtain fees under § 506(b), the court there indicated:

> We must remand for a determination of whether these elements are satisfied, specifically; whether the contract clause covers the fees requested in this action; whether [the creditor] is a "prevailing party" under the clause; and whether the fees requested are reasonable. 151 B.R. at 935.

From this statement, the debtor concludes that the court in *In re Alpine Group, Inc.* has adopted the debtor's contentions, herein. The debtor's reliance is misplaced.

The Bankruptcy Appellate Panel indicates, as stated above, that they remand for a determination as to whether the creditor is a "prevailing party under the clause; ..." There, the attorney's fee clause in question provided:

> 9. ATTORNEY FEES: If this Promissory Note is placed in the hands of an attorney for collection and/or if any legal action, arbitration or other proceeding including a non-judicial foreclosure, is commenced to enforce or interpret any provision of this Promissory Note, the prevailing party shall be entitled to an award of its actual expenses, including without limitation, ... attorney's fees, ... 151 B.R. at 935, n. 6.

Thus, in *In re Alpine Group, Inc., supra,* the attorney's fees clause in the contract required that the creditor be the "prevailing party" in order to recover attorney's fees. Such a requirement is not present in the notes and trust deeds before this court in this case.

Clearly, an award of attorney's fees and costs to Gentra are provided for under the Notes. Based upon the foregoing, this court concludes that Gentra is entitled to recover its attorney's fees and costs incurred herein as part of its secured claim pursuant to § 506(b). A discussion of the amount of such an award follows.

### Reasonableness of Fees and Costs.

It remains for this court to determine the amount of fees that should be allowed to Gentra as part of its allowed secured claim herein, in short, the amount of the fees sought which are reasonable.

Gentra argues that in this case, a determination of reasonableness is not required. While conceding that it is only entitled to reasonable fees and costs pursuant to § 506(b), Gentra notes that this is a solvent estate. Accordingly, it maintains that any fees and costs for which the debtor is contractually liable that are found not recoverable under § 506(b) should still be allowed as an unsecured claim which would be paid in full under the terms of the debtor's con-

---

4. California Civil Code § 1717(a) provides:

*In any action on a contract,* where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party,

then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. (emphasis added).

firmed plan in this case. Gentra relies upon *Sanson Investment Company v. 268 Limited (In re 268 Limited )*, 789 F.2d 674 (9th Cir. 1986) to support its position.

In *268 Limited,* the court limited the amount of attorney's fees the creditor could claim as a secured claim under § 506(b) but noted that this did not preclude the creditor from seeking the balance of its fees as an unsecured claim. In that case: "The deed of trust provided that in the event of default and sale of the property by the trustee, five percent of the balance remaining due at the time of default would be paid . . . as attorney's fees." 789 F.2d at 675. The creditor argued that the fee provision was enforceable under Nevada law. Theoretically, a gap could be created between the amount of a "reasonable fee" and the amount of the fee that would be enforceable and allowed under Nevada state law. The court noted that the creditor could still claim any fees found not to be reasonable pursuant to § 502 dealing with allowance of claims.

Here, even the notes provide that: "If a judgment is obtained thereon which includes an award of attorneys' fees, such attorneys' fees, costs and expenses shall be in such amount as the court shall deem reasonable, . . ." ¶ 6.4 of the Boulders Note and ¶ 7.4 of the Trails Note, in part. Thus, under § 506(b), Oregon law or the notes themselves, this court must determine the reasonableness of any fees and costs sought by Gentra. Since this court has already found that Gentra is an oversecured creditor, that portion determined to be reasonable should be allowed as part of Gentra's secured claim under § 506(b), the balance should be disallowed.

The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors

might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. *Pasatiempo Properties v. Le Marquis Associates (In re Le Marquis Associates )*, 81 B.R. 576, 578 (9th Cir. BAP 1987).

In addition, this court must also determine whether the fees sought are reasonable in amount or excessive.

Gentra seeks, as part of its allowed secured claim attorney's fees in the amount of $131,100.06 for fees and costs incurred by Gentra's Oregon attorneys, Ater, Wynne and attorney's fees and costs in the amount of $40,716.37 for fees and costs incurred by Gentra's Arizona attorneys, NPPK.[5] These are the fees and costs which Gentra claims should be allowed as part of its allowed secured claim herein for services rendered through April 17, 1993 the date the order confirming the plan was entered in this case.[6]

The court has reviewed the memoranda submitted by the parties in support of and in opposition to the attorney's fees and costs claimed by Gentra. In addition to the memoranda, which sets forth the parties' respective positions, Gentra relies upon the Affidavit Of James C. Lancaster In Support Of Motion Of Oversecured Creditor For Reimbursement Of Attorney Fees And Costs filed January 28, 1994, Second Supplemental Affidavit Of James C. Lancaster In Support Of Motion Of Oversecured Creditor For Reimbursement Of Attorney Fees And Costs dated February 22, 1994 and the Affidavit Of Mark D. Svejda In Support Of Motion Of Secured Creditor For Reimbursement Of Attorney Fees And Costs filed January 28, 1994. At the hearing held on February 23, 1994, Owen McCullen, a bankruptcy attorney, testified on behalf of the debtor as an expert witness concerning the reasonable-

**5.** It should be noted that this case and a companion case *In re The Trails at Mount Scott* were both initially filed in the United States Bankruptcy Court for the District of Arizona. Gentra's predecessor in interest filed motions for change of venue in both cases. The motion was granted with respect to this case which has been transferred to this court. The motion was denied with respect to the Trails case which remains in the

District of Arizona. NPPK is, therefore, the law firm representing Gentra and its predecessors in the Arizona bankruptcy proceedings.

**6.** A review of the court's file indicates that the order confirming the debtor's plan was entered, herein, on April 14, 1993.

ness of the attorney's fees and costs sought by Gentra.

■ Turning first to the fees and costs incurred on behalf of Gentra through its Arizona attorneys (NPPK), Mr. McCullen testified that he did not feel qualified to testify as an expert witness regarding the fees requested by NPPK in the Arizona proceedings. Mr. McCullen did testify, however, that it was unreasonable for Gentra to pursue guarantor litigation. According to the affidavit of Mr. Svejda, $4,009 of the fees incurred by NPPK were incurred as a result of the guarantor litigation.

The evidence presented at the hearing established that the Bank held personal guarantees from James J. Miller and Peter Hrebec, III, the principals of the debtor. The evidence was uncontroverted that both Mr. Miller and Mr. Hrebec have been long time residents of the State of Arizona, a community property state. They are both married and they own no separate assets. Their respective wives did not sign or otherwise give personal guarantees to the Bank as security for the Boulders or Trails notes.

The parties agreed that, under Arizona law, Gentra and its predecessors could not reach the community property assets of Mr. Miller and Mr. Hrebec to satisfy any portion of Gentra's debt. Accordingly, Mr. McCullen testified that it was unreasonable for Gentra's predecessor to incur large attorney's fees in pursuing guarantor litigation which it knew or should have known would be fruitless.

This court agrees. That portion of the fees incurred by NPPK in the sum of $4,009 should not be allowed. The balance of the fees incurred by NPPK appear to be reason-

able and should be allowed to Gentra as part of its allowed secured claim in the amount of $29,044.

With respect to the costs and expenses incurred by both firms, the debtor argues that the costs should not exceed this court's guidelines set forth in General Order 94–1.[7]

Reviewing the costs and expenses incurred by NPPK, the court finds the following:

■ 1. *Photocopies:* 2,088 copies were charged at $.25 per copy for a total of $521.93. At $.15 per copy (suggested in General Order 94–1) the charge would be $313.20. The court concludes that $.25 is excessive and believes a reduction of $208.73 is appropriate.

■ 2. *Westlaw charges for computerized legal research billed at $1,922:* The debtor urges the court to disallow this cost as being excessive and without adequate explanation. Mr. Svejda indicates, in his affidavit, that Westlaw charges are at cost. General Order 94–1 suggests that such costs may be allowed if they are charged at invoiced or actual cost. Thus, this charge should be allowed.

■ 3. *Delivery or overnight services:* The debtor argues that these costs should not be allowed. They are de minimis (under $200). The court disagrees with the position taken by the debtor and the costs will be allowed.

■ 4. *FAX transmissions, $92:* The debtor urges that this charge be disallowed as lacking adequate explanation. In addition, the debtor relies upon the suggestion of General Order 94–1 which allows for FAX charges as follows: "[I]ncoming at $.25 per

---

7. General Order 94–1 was entered on March 23, 1994, approximately one month after the hearing in this case. The General Order sets forth certain guidelines that shall apply to attorneys and other professionals seeking reimbursement of costs and expenses as part of fee applications. It provides, inter alia, that if the costs do not exceed the guidelines, there is a rebuttable presumption that the costs are reasonable. If the costs exceed the guidelines, the applicant must submit evidence that the amount sought is reasonable and does not include profit and/or charges that are properly part of overhead. While the order is not binding in this case since

it was entered after the hearing on the objection to Gentra's claim, this court agrees with debtor's counsel that the guideline may, at least, be instructive in assisting the court in evaluating whether or not the costs incurred by Gentra's attorneys are clearly excessive. Further, this court notes that it has always been the practice in this district to allow professionals to be reimbursed for costs and expenses at cost. In other words, this court has not allowed costs to be used as profit centers for professional firms and has not allowed long distance telephone charges, postage costs, etc. to be billed at "cost plus".

page; outgoing at actual telephone charges; actual cost for outside services;" Mr. Svejda explains that NPPK has charged at $1 per page if the transmission is over 20 pages, otherwise it is included in hourly billing rates. Under the circumstances, this court believes that the charge is reasonable and should be allowed.

5. *Filing Fees $323:* The debtor argues that NPPK has not provided adequate detail. Given the small amount of this charge ($323) this court is willing to assume the honesty of NPPK's attorneys that the filing fees represent actual filing fees paid to a court or similar agency in the representation of Gentra and its predecessors, herein. This charge will be allowed.

6. The balance of the entries for costs and expenses incurred by NPPK are not contested by the debtor, appear to be reasonable and should be allowed.

According to the affidavit of Mr. Svejda, costs and expenses were incurred by NPPK on behalf of Gentra in the amount of $7,663.37. Reducing that sum by the sum of $208.73 results in costs and expenses that should be allowed in the sum of $7,454.64. Gentra should be allowed attorney's fees and costs incurred by NPPK, its Arizona attorneys, in the sum of $36,498.64.

We turn next to a consideration of the attorney's fees, costs and expenses requested by Gentra, incurred by its Oregon attorneys, Ater, Wynne. Mr. McCullen testified at length concerning the fees, costs and expenses incurred by this firm. The debtor's opposition to these fees and costs are more extensive.

■ The standard suggested by the Bankruptcy Appellate Panel in *In re Le Marquis Associates* requires that this court determine first, whether the fees and expenses fall within the scope of the fees provision in the agreement. The debtor contests many of the fees and charges on this basis.

The affidavit of Mr. Lancaster indicates that Gentra should be allowed the sum of $3,937.50 for services rendered pre-confirmation, concerning an appeal of this court's order confirming the debtor's plan of reorganization in this case. Mr. McCullen offered

no opinion on this issue at the hearing. The debtor argues, however, that these fees should not be allowed since only a prevailing party may recover attorney's fees. This court has already indicated, in this opinion, that Gentra need not prove that it is the "prevailing party" in order to recover the fees and costs it seeks as part of its allowed secured claim pursuant to § 506(b). Accordingly, this court concludes that these services undertaken, on Gentra's behalf, by Ater Wynne are not outside the scope of the fees provision in the notes. In addition the fees appear to be otherwise reasonable and should be allowed.

■ During the course of this case, the debtor pursued litigation against First Interstate Bank. A subpoena was served upon Gentra, or its predecessor, to produce documentation in connection with that litigation. Ater Wynne incurred fees in the amount of $10,297.50 in response to the subpoena and related matters. The debtor argues that these fees should not be allowed as part of Gentra's claim against the debtor since they are outside the scope of the fees provision of the Notes and do not relate to Gentra's collection of its debt. Mr. McCullen testified in accordance with the position taken by the debtor. In his affidavit, Mr. Lancaster explains that Gentra felt it necessary to incur the fees because it felt that the First Interstate litigation could be used as a discovery tool to obtain information in this bankruptcy case. This court agrees with the position taken by the debtor that the services rendered by Ater Wynne to Gentra concerning the First Interstate Bank litigation are outside the scope of the fees provisions in the Notes and should not be allowed as part of Gentra's claim.

■ According to Mr. Lancaster's affidavit, Gentra seeks fees incurred by Ater, Wynne in the amount of $4,474.50 for loan documentation. The debtor contends, that of that sum, $3,495.50 is related to the assignment of Gentra's claim from the Bank to Gentra. The debtor argues that these services fall outside of the scope of the fees provision in the Notes and should not be charged to the debtor. Mr. McCullen testi-

fied in accordance with the position taken by the debtor. This court agrees. It seems clear that the debtor should not be charged for expenses incurred by Gentra in acquiring this claim from its predecessor in interest. Accordingly, a reduction in the amount of $3,495.50 is appropriate.

■■■ Gentra acquired an unsecured claim (a debt owing by the debtor to Eugene Water and Electric Board (EWEB), as part of its litigation tactics in this case to oppose the debtor's plan of reorganization which was ultimately confirmed. The debtor argues that it should not be saddled with the fees incurred by Gentra in acquiring and defending the unsecured claim of EWEB. While the acquisition of unsecured claim, by a secured creditor, may enhance the creditor's position, it does not appear to be within the scope of the fees provision in the Notes and should not be allowed. Mr. McCullen testified in accordance with the position taken by the debtor, recommending a reduction in the Ater, Wynne fees in the amount of $1,291 in connection with this matter. This court is persuaded that Mr. McCullen's recommendation is correct.

■■■ Assuming the fees fall within the scope of the fees provision in the Notes, the next step in the court's analysis is to determine whether or not the fees and costs were generated by the kinds of actions that a similarly situated creditor might reasonably conclude should be taken to protect its interest.

■■■ Ater, Wynne incurred fees in the amount of $1,095.50 considering ethical matters in an effort to decide whether or not it would attempt to disqualify debtor's counsel, Muhlheim, Palmer, Zennache´& Wade (Muhlheim Palmer). The debtor argues that these fees fail to meet the standard set forth above in that these services were not reasonably necessary to protect Gentra's interest and should not have been undertaken. Mr. McCullen testified in accordance with the position taken by the debtor.

This court disagrees. Apparently, Valerie Fisher, of Ater, Wynne, had had some contact with John Watkinson about the role of local counsel prior to the bankruptcy filing in this matter. At that time, Mr. Muhlheim and Mr. Watkinson were members of the same law firm. Gentra may have been concerned as to whether or not Muhlheim, Palmer was in possession of confidential information that could be used against Gentra in this case. In addition, Gentra may have felt that it could gain a tactical advantage by disqualifying the Muhlheim, Palmer firm, given that firm's bankruptcy expertise. In any event, the amount sought appears to be a reasonable amount to allow Ater, Wynne to investigate the matter on behalf of its client. Accordingly, it should be allowed.

Gentra seeks $9,751.50 as fees incurred by Ater, Wynne in the guarantor litigation which has already been described. Based upon this court's rationale, set forth above, in discussing the NPPK fees, this court does not believe that the guarantor litigation was litigation that a similarly situated creditor might reasonably conclude should be undertaken, given the fact that it was unlikely to lead to any recovery. Accordingly, this court agrees with the position taken by the debtor that this sum should not be allowed.

Assuming the services rendered by Ater, Wynne fall within the fees provision in the Notes and that the services represent the kinds of actions that similarly situated creditors might reasonably conclude should be taken, this court must still find that the amounts charged are not excessive. This requires a further discussion of the Ater, Wynne fees in several particulars.

■■■ The affidavit of Mr. Lancaster breaks the services rendered by Ater, Wynne into several categories. The first category concerns pre-bankruptcy services related to document modification, document analysis, litigation preparation and strategy. It appears that the fees related to this category total $11,682. Of that sum, the sum of $9,148 was characterized as litigation preparation and strategy. Mr. McCullen testified that this appeared to be related to a potential foreclosure/receivership proceeding which the Bank contemplated filing in state court. Mr. McCullen further testified that his office never charges more than $5,000 to file a foreclosure/receivership case and bring the

matter to an initial hearing in state court. Here, he indicated that no complaint was ever filed. Based upon this testimony, this court believes that the sum of $5,000 should be allowed for services rendered in regards to "litigation, preparation and strategy". In other words, a $4,148 reduction should be made.

■ The affidavit of Mr. Lancaster then discusses services rendered by Ater, Wynne as part of initial bankruptcy services. It appears that fees in the amount of $2,902.50 were incurred regarding the motion to change venue in this matter. Based upon a review of Mr. Lancaster's affidavit and the affidavit of Mr. Svejda, it appears that Ater, Wynne did most of the legal research regarding the motion ·to change venue which was then furnished to NPPK who actually handled the filing and argument of the motion before the bankruptcy court in Arizona. Mr. McCullen testified that the services charged by Ater, Wynne are excessive. He indicates that legal research on the motion to change venue should not have taken more than two to three hours. This court agrees. A reduction of $2,497.50 is appropriate.

■ Under the heading of initial bankruptcy services, the fees incurred by Ater, Wynne appear to be $1,260 for analyzing the debtor's proposed plan and $1,673 for analyzing the proposed disclosure statement. These fees appear to be reasonable and should be allowed. In addition, the services rendered concerning cash collateral matters appear to be reasonable.

■ The fees incurred for resisting the debtor's proposed plan of reorganization are $49,875 exclusive of the work done on the appeal. Mr. McCullen testified that the plan and disclosure statement are not complex and that a substantial reduction in these fees would be appropriate.

Here, the court notes that the debtor's plan substantially modifies Gentra's fully matured construction loan to the debtor. Pursuant to the terms of the plan as proposed, the claim of Gentra was to have been paid over seven years, with monthly payments based upon a 30 year amortization including interest at 8% per annum, with a balloon payment due at the end of the seven year period. Given the size of the loan involved and the substantial modification of Gentra's claim, as proposed by the debtor, it was reasonable for Gentra to oppose confirmation of the debtor's proposed plan. There were questions concerning the valuation of the real property and improvements, the amount of cash on hand retained by the debtor and other matters. On ˙balance, this court believes that the amount sought by Gentra is reasonable and should be allowed.

The balance of the pre-confirmation fees requested by Gentra, incurred by Ater, Wynne, appear to be reasonable and should be allowed. In summary, according to the affidavit of Mr. Lancaster, the services incurred by Ater, Wynne, pre-confirmation, total $101,802.50. Based upon the foregoing, $31,481 should be deducted from that sum. Accordingly, Gentra should be allowed, as part of its secured claim, fees incurred by Ater, Wynne in the amount of $70,321.50.

We turn next to the analysis of the costs and expenses incurred by Ater, Wynne.

1. *Long distance telephone charges:* Here, the debtor maintains that the long distance charges incurred by Ater, Wynne should be reduced to the same amount that debtor's law firm would have paid for the same charges. General Order 94–1 suggests that long distance telephone charges be charged at actual cost. In his affidavit, James C. Lancaster states that long distance telephone charges do not include any amounts in excess of the amount paid to the provider of the service. Accordingly, this court believes that the long distance charges are reasonable and may be allowed.

2. *Photocopies:* The debtor makes numerous arguments as to why charges in this category should be reduced. The debtor indicates that no explanation is given for the use of Nightrider overnight service, Barrister's Aide, and other matters. Given the size of this case, these charges do not appear to be unreasonable. The debtor points out, however, that Ater, Wynne appears to charge $.20 per page for photocopies which is confirmed by Mr. Lancaster's affidavit. The debtor suggests that $.15 should be the ap-

propriate rate and this court agrees for the reasons stated above. Accordingly a reduction in the photocopy costs of $540.95 is appropriate.

■ 3. *CD Rom Bankruptcy Service:* The debtor notes that a charge for $260 for CD Rom Bankruptcy Service should not be allowed since it should be considered part of the firm's overhead. This court agrees. CD Rom Bankruptcy Service provides an electronic version of West Publishing Company's bankruptcy related publications. The charges here are analogous to maintaining a law library. Costs involved in maintaining a law library should be considered part of the law firm's overhead. A reduction of $260 is appropriate.

4. *Westlaw charges:* The debtor maintains that a $1,288.70 reduction is appropriate for Westlaw charges. In his Second Supplemental Affidavit, Mr. Lancaster addresses the issue of Westlaw at length. This court agrees with the position taken by Mr. Lancaster, but notes that in his first affidavit, he indicates that Westlaw charges are charged at cost plus 50%. In accordance with the suggestions contained in General Order 94–1 and this court's long standing practice that costs and expenses charged not exceed the actual cost, the attempt to charge 50% over the actual cost is excessive. These charges should be reduced by $429.57.

5. *Messenger services:* Debtor disputes the charges for messenger services and usage of Federal Express, based on lack of satisfactory explanation. Based upon the size of this case, this court believes, however, that these charges are reasonable and that they should be allowed.

■ 6. *FAX charges:* The debtor disputes Ater, Wynne's FAX charges. General Order 94–1 suggests that FAX charges be charged as follows: "[I]ncoming at $.25 per page; outgoing at actual telephone charges; actual cost for outside services;" A review of Mr. Lancaster's affidavit indicates that they have charged for FAX transmissions prior to July 1, 1992 as follows; $5 for the first page, $1 for each additional page not to exceed $16. Long distance charges at $7.50 for the first page, $2.50 for each additional page plus long

distance charges not to exceed $32. After July 1, 1992, the firm charges $3 for the first page, $.50 for each additional page; long distance charges at $3 for the first page and $.50 for each additional page plus long distance charges at cost. Comparing the FAX charges with those suggested by General Order 94–1, one must conclude that the charges are very excessive. Considering that long distance charges are recovered at cost, Ater, Wynne appears to be using its FAX machine to generate profits. This court will not allow the FAX charges. A reduction of $595.37 is appropriate.

7. *Travel expenses:* Debtor disputes the travel expenses charged by Ater, Wynne. Mr. Lancaster's affidavit explains that mileage is charged at $.28 per mile (the IRS guideline), other travel expenses are charged at cost. This court accepts Mr. Lancaster's explanation, no reduction shall be made.

The balance of the costs charged by Ater, Wynne appear to be mainly expert witness fees. The debtor has not challenged these fees, they appear to be reasonable and shall be allowed.

In summary, Ater, Wynne's costs total $29,297.56. Based upon the foregoing, a reduction of $1,825.89 is appropriate. Accordingly, the charges incurred by Ater, Wynne should be allowed in the sum of $27,471.67. Gentra should be allowed, as part of its allowed secured claim, pursuant to § 506(b), the total sum of $97,793.17 for the fees and costs incurred by Ater, Wynne.

The parties have presented some argument concerning post-confirmation fees and costs incurred by Gentra. The issue presented to this court for decision, however, is the amount of Gentra's allowed secured claim as of the date of confirmation, that must be provided for in the debtor's confirmed plan of reorganization. Accordingly, this court declines to make any determination of post-confirmation fees and costs at this time. Further proceedings may be had, as necessary, to resolve these matters.

## CONCLUSION

Based upon the foregoing, this court concludes that Gentra's allowed secured claim,

as of the date of confirmation of the debtor's confirmed plan, should be fixed in the amount of $13,546,255.98 consisting of the following:

1. Principal and interest in the amount of $13,411,964.17 pursuant to the stipulation of the parties, given this court's conclusion that the default rate of interest may not be applied;

2. Attorneys' fees and costs incurred by Gentra through its Oregon counsel, Ater, Wynne in the sum of $97,793.17; and

3. Attorneys' fees and costs incurred by Gentra through its Arizona counsel, NPPK in the sum of $36,498.64.

This opinion includes the courts findings of fact and conclusions of law; they shall not be separately stated. An order consistent herewith shall be entered.