OPINION
 

 WIGGINS, Circuit Judge:
 

 Kord Enterprises II appeals the district' court’s affirmance of a bankruptcy court order awarding California Commerce Bank $121,012.41 in attorneys’ fees and costs pursuant to 11 U.S.C. § 506(b). Kord argues that our decision in
 
 Fobian v. Western Farm Credit Bank (In re Fobian),
 
 951 F.2d 1149 (9th Cir.1991), prohibits the award of attorneys’ fees for “issues peculiar to federal bankruptcy law,” notwithstanding the lack of such a restriction in the language of § 506(b). Kord also contends that .state law should govern any award of attorneys’ fees. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.
 

 BACKGROUND
 

 In January 1990, Appellant Kord Enterprises II (“Kord”) acquired commercial real estate in Fremont, California. The property was valued at more than $1,200,000 at the time of acquisition. Soon thereafter, Kord began construction of a multi-tenant commercial budding on the property and invested about $3,000,000 in the project. Appellee California Commerce Bank (the “Bank”) financed the construction cost. In April 1990, Kord executed and delivered to the Bank its written Budding Loan Agreement and Assignment of Account.
 
 [1]
 
 Kord executed a $1,738,000 promissory note in favor of the Bank (“Note No. I”).
 
 [2]
 
 To secure repayment
 
 *686
 
 of this note, Kord executed a deed of trust (“First Deed of Trust”) in favor of the Bank on the property.
 
 [3]
 

 Thereafter, Kord executed two additional promissory notes in favor of the Bank (“Note No. 2” and “Note No. 3”).
 
 [4]
 
 Repayment of Note No. 2 was secured by the First Deed of Trust. Note No. 3 was secured by a recorded second deed of trust on the personal residence of Farhang Kordestani (“Second Deed of Trust”).
 

 Kord failed to pay the Bank the amounts owed under the terms of all three notes on October 30, 1993, and the Bank instituted foreclosure proceedings on the Second Deed of Trust. In response, Kord filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 11, 1994. On May 22, 1995, the bankruptcy court confirmed Kord’s Plan of Reorganization. Kord has operated under that plan since the confirmation.
 

 After the confirmation, the Bank sought attorneys’ fees and costs pursuant to 11 U.S.C. § 506(b). The Bank was an overse-eured creditor within the meaning of § 506(b). The bankruptcy court found that Kord agreed in the underlying contracts to pay the Bank’s fees and costs. Thus, the court awarded the Bank $121,012.41 in attorneys’ fees and costs. The bankruptcy court did not award any expenses or fees to the Bank in connection with related state court litigation.
 

 Kord appealed this award to the district court. On September 18, 1996, the district court affirmed the Bankruptcy Order. Kord timely appeals.
 

 STANDARD OF REVIEW
 

 We review a district court’s decision on appeal from a bankruptcy court order de novo, applying the same standard of review to the bankruptcy court findings as did the district court.
 
 See Ford v. Baroff (In re Baroff),
 
 105 F.3d 439, 441 (9th Cir.1997);
 
 Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),
 
 912 F.2d 1162, 1166 (9th Cir.1990). We will not disturb a bankruptcy court’s award of attorneys’ fees unless the bankruptcy court abused its discretion or erroneously applied the law.
 
 See In re Baroff,
 
 105 F.3d at 441;
 
 Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.),
 
 40 F.3d 1059, 1062 (9th Cir.1994).
 

 DISCUSSION
 

 I.
 

 This case is a dispute about the proper relationship between § 506(b) and several Ninth Circuit decisions that have addressed the award of attorneys’ fees in bankruptcy eases. Kord maintains that
 
 In re Fobian,
 
 951 F.2d 1149 (9th Cir.1991), and other subsidiary cases prohibit the award of attorneys’ fees under § 506(b) for “issues peculiar to federal bankruptcy law.” The Bank argues that those cases do not apply to an award under § 506(b). As outlined below, we reject Kord’s arguments because they are based on a mistaken reading of our precedent and ignore controlling law.
 

 Any analysis of this issue must begin with the statute itself. Section 506(b) provides:
 

 To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the
 
 *687
 
 amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
 

 § 506(b). Both parties agree that the Bank was an oversecured creditor and thus came within the purview of § 506(b). The language of that section is clear. The creditor is entitled to attorneys’ fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.
 
 See, e.g., Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.),
 
 151 B.R. 931, 935 (9th Cir. BAP 1993);
 
 Mentor Mortgage Corp., West v. Salazar (In re Salazar),
 
 82 B.R. 538, 540 (9th Cir. BAP 1987). Under this test, the bankruptcy court properly awarded fees to the Bank. Kord maintains, however, that there is more to the inquiry than is apparent on the face of § 506(b).
 

 Kord relies heavily on this court’s decision in
 
 In re Fobian
 
 for the proposition that the Bank should not have been awarded attorneys’ fees for “issues peculiar to federal bankruptcy law.” We note at the outset what
 
 In re Fobian
 
 is
 
 not.
 
 It is not a § 506(b) case. The creditor in
 
 In re Fobian
 
 was underseeured and, consequently, § 506(b) was not at issue. There is no federal statutory provision comparable to § 506(b) that grants attorneys’ fees to underseeured creditors. The court in
 
 In re Fobian
 
 simply held that, in the case of underseeured creditors, “where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney’s fees will not be awarded absent bad faith or harassment by the losing party.”
 
 In re Fobian,
 
 951 F.2d at 1153. The court gave no indication that this rule could or should be applied to a federal statute that specifically grants attorneys’ fees to overseeured creditors. Section 506(b) does impose some restrictions, but it does not prohibit the award of attorneys’ fees for litigated “issues peculiar to federal.bankruptey law.”
 

 Kord argues that the absence of any discussion about § 506(b) in
 
 In re Fobian
 
 is insignificant. Kord cites the case for the proposition that attorneys’ fees are unavailable for “issues peculiar to federal bankruptcy law” even if a statute authorizes the fees. In doing so, Kord fails to give the federal statute its proper weight. Section 506(b) is the law. It includes some restrictions, but the one imposed in a different context in
 
 In re Fobian
 
 is not one of them.
 

 Kord’s other authorities are equally unavailing.
 
 In re Baroff,
 
 105 F.3d 439 (9th Cir.1997), involved a request for attorneys’ fees by a debtor, not an oversecured creditor. The court did not discuss § 506(b). The court simply reiterated the rule that there is no general right to attorneys’ fees under the Bankruptcy Code.
 
 See id.
 
 at 441. Section 506(b) carves out an exception to that general rule for oversecured creditors.
 

 Kord also substantially relies on
 
 Johnson v. Righetti (In re Johnson),
 
 756 F.2d 738 (9th Cir.1985),
 
 Collingwood Grain, Inc. v. Coast Trading Co., Inc. (In re Coast Trading Co., Inc.),
 
 744 F.2d 686 (9th Cir.1984),
 
 Alvarado v. Walsh (In re LCO Enterprises, Inc.),
 
 180 B.R. 567 (9th Cir. BAP 1995), and
 
 Rouse & Sons, Inc. v. Specialty Plywood, Inc. (In re Specialty Plywood, Inc.),
 
 160 B.R. 627 (9th Cir. BAP 1993) to support its argument. These cases are inapposite. None of them involves § 506(b); therefore, they do not govern the result in this case. Indeed,
 
 In re LCO Enterprises, Inc.
 
 refutes Kord’s interpretation of § 506(b). After recognizing that the legislature is the entity authorized to reallocate the fees in federal'court, the bankruptcy appellate panel noted:
 

 Congress has created attorneys’ fees provisions in some statutes. For example, § 362(h) allows for the payment of attorneys’ fees for willful violations of the automatic stay. Section 506(b) is another section which provides for the payment of an over-secured creditor’s attorneys’ fees if their agreement so provides. However, [the appellant] cites to no similar provision or legislative history surrounding either § 547 or § 365.
 

 In re LCO Enterprises, Inc.,
 
 180 B.R. at 570 (citations omitted). We agree that Congress chose to grant attorneys’ fees to oversecured creditors provided the requirements of § 506(b) are satisfied.
 

 
 *688
 
 Kord draws our attention to only one case involving § 506(b) that supports its argument. The bankruptcy court in
 
 In re Rubottom,
 
 142 B.R. 407 (Bankr.D.Or.1992), held that the limitation of
 
 In re Fobian
 
 should be extended to claims under § 506(b) and that “[n]o creditor or debtor will be allowed attorney fees for litigating issues related to a contract if those issues are peculiar to bankruptcy.”
 
 In re Rubottom,
 
 142 B.R. at 409 (internal quotations omitted). The bankruptcy court acknowledged that there was considerable merit in the competing argument but felt compelled by
 
 In re Fobian
 
 and
 
 In re Johnson
 
 to hold that attorneys’ fees were not available under § 506(b).
 
 See In re Rubottom,
 
 142 B.R. at 409-10. None of the cases relied upon by the court in
 
 In re Rubottom
 
 involves the application of § 506(b).
 
 In re Rubottom
 
 is incorrect and must be overruled.
 
 See Jensen v. Marnie Manor, Ltd.,
 
 No. 93-868-JO, 1993 WL 735780, at *1 (D.Or. Dec. 3, 1993) (stating that
 
 In re Rubottom
 
 was wrongly decided);
 
 In re Boulders on the River, Inc.,
 
 169 B.R. 969, 975 (Bankr.D.Or.1994) (reaching a conclusion contrary to the decision in
 
 In re Rubottom); In re Alpine Group, Inc.,
 
 151 B.R. at 934 (recognizing that the cases relied upon in
 
 In re Rubottom
 
 merely restate the American rule and do not dictate the result when § 506(b) is at issue). Many cases after
 
 In re Fobian
 
 have reached a contrary, and more persuasive, result.
 

 In
 
 In re American Punjab Corp.,
 
 150 B.R. 763 (Bankr.E.D.Cal.1993), the bankruptcy court found
 
 In re Fobian
 
 inapposite in a case involving § 506(b):
 

 In the present ease, the issue is the award of attorney’s fees pursuant to 11 U.S.C. § 506(b). Here, unlike in
 
 Fobian,
 
 á specific Code section allows such an award provided all of the other requirements of that section are met. The creditor in
 
 Fobian,
 
 unlike the Bank here, clearly was underse-cured and could not have used § 506(b) in support of any fee request.
 

 In re American Punjab Corp.,
 
 150 B.R. at 766 n. 1. Similarly, several bankruptcy appellate panels have awarded attorneys’ fees under § 506(b) for litigated issues peculiar to federal bankruptcy law.
 
 See, e.g., In re Alpine Group, Inc.,
 
 151 B.R. 931;
 
 In re Salazar,
 
 82 B.R. 538;
 
 Pasatiempo Properties v. Le Marquis Assoc. (In re Le Marquis Assoc.),
 
 81 B.R. 576 (9th Cir. BAP 1987). These cases accord with the plain meaning of § 506(b).
 

 Finally, a recent decision in the Eighth Circuit supports our interpretation of § 506(b). In
 
 First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.),
 
 104 F.3d 200, 201 (8th Cir.1997), the court held that an oversecured creditor need only meet the requirements of § 506(b) to be eligible for attorneys’ fees. The court did not impose additional limitations on oversecured creditors.
 

 In sum, Kord overlooks one crucial fact in its argument: the cases it cites have nothing to do with § 506(b). This ease does involve § 506(b) and, as a result, its resolution is not dictated by Kord’s authority. All of the cases interpreting § 506(b), with the exception of one bankruptcy court decision, reject Kord’s reading of our precedent. Moreover, § 506(b), the governing law in this case, is unambiguous. The section does not limit the award of attorneys’ fees to “basic contract enforcement questions.” An oversecured creditor need only satisfy the explicit requirements of § 506(b) to obtain attorneys’ fees. Thus, attorneys’ fees are not foreclosed under § 506(b) for “issues peculiar to federal bankruptcy law.”
 

 II.
 

 Kord also argues that any award of attorneys’ fees must be governed by state law. In support of this argument, Kord emphasizes that § 506(b) authorizes “any reasonable fees, costs, or charges provided for under
 
 the agreement under which such claim arose.”
 
 § 506(b) (emphasis added). Kord contends that this language necessarily implicates state law because the loan agreement arose under and can be interpreted only with reference to state law. In addition, Kord cites several cases for the proposition that the trial court must apply state law when awarding attorneys’ fees. An analysis of § 506(b) and relevant case law, however, confirms that § 506(b) preempts state law.
 

 
 *689
 
 First, § 506(b) does not reference state law. The section does not require that attorneys’ fees be awarded only when state law would permit such an award. Rather, the section states that oversecured creditors are entitled to reasonable fees if the agreement so provides. Second, the legislative history of § 506(b) suggests that Congress considered and rejected the idea that fees should be subject to state law. The House’s version of the statute allowed fees “to the extent collectible under applicable law.” H.R. 8200, 95th Cong. (1977). The Senate version, which was later enacted as the current § 506(b), made no reference to “applicable law.” The floor managers of the bill, Representative Edwards and Senator DeConcini, reported to Congress that the conference committee rejected the House’s qualifying language:
 

 Section 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R. 8200 as passed by the House. If the security agreement between the parties provides for attorneys’ fees, it will be enforceable under title 11,
 
 notwithstanding contrary law
 
 ....
 

 124 Cong. Rec. 32,350, 32,398 & 33,989, 33,-997 (1978) (emphasis added). Thus, the legislative history of the section conflicts with Kord’s interpretation.
 

 Once again, Kord relies on cases that do not involve § 506(b). The courts in
 
 In re Baroff
 
 and
 
 In re Fobian
 
 held that the trial court must look to state law to determine if an award of fees was appropriate for actions on the contract.
 
 See In re Baroff,
 
 105 F.3d at 441;
 
 In re Fobian,
 
 951 F.2d at 1153. Kord ignores the essential distinction that these cases do not involve § 506(b). In this ease, there is a federal statute that explicitly grants attorneys’ fees to overseeured creditors and says nothing about state law.
 

 Several cases have interpreted § 506(b) as preempting state law. This court has held that “ § 506(b) preempts the state law governing the availability of attorney’s fees as part of a secured claim....”
 
 Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.),
 
 789 F.2d 674, 675 (9th Cir.1986). Kord asks us to dismiss this holding because it predates
 
 In re Fobi-an.
 
 We cannot dismiss it, however, because
 
 In re Fobian
 
 did not involve § 506(b). The holding of
 
 In re 268 Ltd.
 
 remains good law and has been followed in subsequent cases in this and other circuits.
 
 See, e.g., In re Schriock Constr., Inc.,
 
 104 F.3d at 201-03;
 
 In re Salazar,
 
 82 B.R. at 540;
 
 In re Le Marquis Assoc.,
 
 81 B.R. at 578. As the Eighth Circuit has noted, “ § 506(b) would be superfluous if the validity of an explicit fee provision were dependent on state law.”
 
 In re Schriock Constr., Inc.,
 
 104 F.3d at 203. All of these cases are uniform in holding that § 506(b) preempts state law.
 

 Kord does not cite any authority for the proposition that state law governs the award of attorneys’ fees under § 506(b). All of Kord’s cases fail to discuss the relevant section. Section 506(b) does not reference state law. The cases that have interpreted § 506(b) agree that it preempts state law. Thus, Kord’s arguments fail.
 

 III.
 

 A creditor must satisfy four elements to be eligible for attorneys’ fees under § 506(b): (1) the creditor’s claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.
 
 See, e.g., In re Alpine Group, Inc.,
 
 151 B.R. at 935. Kord does not dispute that the Bank is an oversecured creditor with an allowed secured claim. In addition, there is no evidence to suggest that the amount awarded by the bankruptcy court was clearly erroneous. The record reveals that “the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken....”
 
 In re Melbell Assoc., Inc.,
 
 99 B.R. 31, 35 (Bankr.E.D.Cal.1989) (quoting
 
 In re Carey,
 
 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981)).
 

 Kord challenges the finding that the attorneys’ fees were provided for under the loan agreement, notes, and deeds of trust. Kord argues that the provisions in these instruments do not provide for attorneys’ fees in bankruptcy-related matters. This
 
 *690
 
 claim is mentless. The fees provisions at issue are broad and do not circumscribe the payment of attorneys’ fees in bankruptcy proceedings. Note No. 3 specifically requires Kord to pay “attorneys’ fees and legal expenses for bankruptcy proceedings.” In light of these various provisions, the attorneys’ fees were provided for in the underlying agreements. As a result, the Bank satisfied the requirements of § 506(b).
 

 CONCLUSION
 

 Appellant Kord’s claim that
 
 In re Fobian
 
 governs § 506(b) cases is inconsistent with controlling law and must be rejected. Moreover, § 506(b) preempts state law. Accordingly, Appellee California Commerce Bank was eligible for attorneys’ fees when it satisfied the requirements of § 506(b).
 

 AFFIRMED.
 

 [1]
 

 . This Agreement provides at paragraph 29:
 

 The Bank shall have the right to commence, to appear in, or to defend any action or proceeding purporting to affect the rights, duties or liabilities of the parties hereunder, or the payment of any funds in said account, and in connection therewith to incur and/or pay all costs and expenses, including its attorneys' fees, in a reasonable amount, in any such action in which Bank shall appear, all of which the Undersigned jointly and severally agree to pay to Bank on demand and to the extent said deposited funds are sufficient. Bank shall have the right, but is not obligated, to pay said costs, expenses or attorneys’ fees out of said deposited funds.
 

 Building Loan Agreement and Assignment of Account at ¶ 29.
 

 [2]
 

 . Note No. 1 provides: "If any amounts owing under this note are not paid when due, Borrower promises to pay all costs and expenses, including attorneys’ fees, incurred by Bank in the collection or enforcement of this Note-” Note No. 1 at ¶ 8.
 

 [3]
 

 . The First Deed of Trust provides:
 

 If Beneficiary institutes any suit or action to enforce any of the terms of this Deed of Trust, Beneficiary shall be entitled to recover such sum as the court may judge reasonable as attorneys’ fees at trial and on any appeal.... Expenses covered by this paragraph include (without limitation) all attorney fees incurred by Beneficiary whether or not there is a lawsuit, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors’ reports, appraisal fees, title insur-anee, and fees for the Trustee, to the extent permitted by applicable law.
 

 First Deed of Trust at ¶ 14.5.
 

 [4]
 

 . Note No. 2 and Note No. 3 include attorneys’ fees clauses similar to those described in footnotes 1-3,
 
 supra.
 
 Note No. 3 specifically requires the Borrower to pay “Lender’s attorneys’ fees and legal expenses whether or not there is a lawsuit, including attorneys’ fees and legal expenses for bankruptcy proceedings....” Note No. 3.