**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: LEHUA HOOPAI,
                        *Debtor,*

COUNTRYWIDE HOME LOANS, INC.,
                        *Appellant,*

v.

LEHUA HOOPAI,

                        *Appellee.*

No. 07-15868

BAP No.
HI-06-01328-KMoB

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Klein, Brandt, and Montali, Bankruptcy Judges, Presiding

Argued and Submitted
November 20, 2008—Honolulu, Hawaii

Filed September 14, 2009

Before: Mary M. Schroeder, Richard A. Paez, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Paez

13321

**COUNSEL**

Brian C. Walsh and Cullen K. Kuhn, Bryan Cave LLP, St. Louis, Missouri, and Katherine M. Windler, Bryan Cave LLP, Santa Monica, California, for the appellant.

Lissa D. Schults and Bradley R. Tamm, Shults & Tamm, LLP, Honolulu, Hawaii, for the appellee.

**OPINION**

PAEZ, Circuit Judge:

Countrywide Home Loans, Inc. appeals from the Bankruptcy Appellate Panel's vacature of a bankruptcy court order awarding Countrywide $83,542.87 in attorneys' fees and costs pursuant to Hawaii Revised Statutes section 607-14. Countrywide argues that it is entitled to the fees as an oversecured creditor pursuant to 11 U.S.C. § 506(b) (2000), or, alternatively, as the prevailing party pursuant to Hawaii state law, section 607-14. Because § 506(b) governs an oversecured creditor's entitlement to attorneys' fees incurred prior to confirmation of a Chapter 13 plan and preempts state law, we conclude that both the bankruptcy court and the Bankruptcy Appellate Panel ("BAP") erred in evaluating Countrywide's fee claim as falling entirely under Hawaii law. We further conclude that debtor Lehua Hoopai was the prevailing party under Hawaii Revised Statutes section 607-14. We therefore vacate the bankruptcy court's order, and remand for the court to award reasonable pre-confirmation fees to Countrywide pursuant to § 506(b), and to reconsider Hoopai's claim for fees as the prevailing party pursuant to section 607-14.

## I.  Background

### A.  *Pre-Chapter 13 Background*

The genesis of the dispute between appellee Lehua Hoopai ("Hoopai") and appellant Countrywide Home Loans, Inc. ("Countrywide"), was Hoopai's default on two loans from Countrywide, which were secured by mortgages on her real property in Kamuela, Hawaii. Following the default, Countrywide scheduled a non-judicial foreclosure sale for April 23, 2004.

But on the day the sale was to be held, Hoopai filed a pro se petition under Chapter 11 of the Bankruptcy Code, automatically staying the sale. There were numerous problems with the filing, described by the bankruptcy court as possessing "many of the hallmarks of a bad faith filing." Hoopai claimed as assets trademarks and copyrights covering her own name, failed to list Countrywide as a creditor, and filed financial schedules that "contained numerous questionable entries." Additionally, she lacked sufficient funds to service her secured debts. The Office of the United States Trustee moved to dismiss or convert the case to Chapter 7, and Hoopai herself later moved to dismiss the case. The bankruptcy court ultimately dismissed the case on September 8, 2004, and Countrywide rescheduled the foreclosure sale for October 15, 2004.

Unbeknownst to Countrywide, on September 21, 2004, Hoopai signed a contract to sell the property to Anna Fern White ("White") for $300,000. The contract provided for a deposit of $1,000, with the remainder of the sale price dependent on White's acquisition of a new mortgage. Hoopai also allowed White to take possession of the property.

With Countrywide unaware of Hoopai's contract with White, the foreclosure sale went forward as planned on October 15. The Maluhia Trust ("Maluhia") offered a high bid of

$159,000, which was accepted; Maluhia paid the full price at the conclusion of the auction. However, Countrywide did not record the affidavit of sale as required by Hawaii Revised Statutes section 667-5 to conclude the sale.

### B.    Post-Petition/Pre-Confirmation Period

Three days after the sale, Hoopai filed another bankruptcy petition, this time under Chapter 13, commencing the current case. Hoopai's Chapter 13 plan envisioned completion of the sale to White and full payment of Countrywide's claims from the sale's proceeds. An automatic stay enjoined Countrywide from completing the sale.

Seeking to complete the sale to Maluhia, Countrywide filed a motion, joined by Maluhia, for relief from the stay. Countrywide argued that the foreclosure sale had extinguished Hoopai's interest in the property, and that the property was therefore not part of the bankruptcy estate. Hoopai opposed the motion, and filed a motion for court approval to sell the property to White. Countrywide opposed both Hoopai's motion to sell and confirmation of her Chapter 13 plan.

The bankruptcy court determined that the house was property of the bankruptcy estate. The court thus denied Countrywide's motion for relief from the automatic stay, and granted Hoopai's motion for approval of the sale to White. On February 23, 2005, the bankruptcy court confirmed Hoopai's Chapter 13 plan.

### C.    Post-Confirmation Period

Maluhia appealed the bankruptcy court's orders to the United States District Court for the District of Hawaii, and sought a stay of the order granting Hoopai's motion for approval to sell the property pending appeal. The court granted a stay pending appeal, but required Maluhia to post a supersedeas bond in the amount of $335,000. Although

Countrywide did not join the appeal, it "monitored" the proceeding, conferred with Hoopai's counsel, and participated in some settlement discussions. The district court ultimately affirmed the bankruptcy court's two orders, entering final judgment for Hoopai on November 25, 2005.

Hoopai then sought Countrywide's consent to sale of the property free of the liens so that she could close the sale to White. A dispute over the amount due to Countrywide arose, with Countrywide claiming entitlement to $236,317.65 after accounting for interest, costs, and attorneys' fees, and Hoopai asserting that this claim was inflated. Countrywide refused Hoopai's offer to release an "undisputed amount" of approximately $158,000 at closing and to hold the disputed amount in escrow in exchange for Countrywide's release of its liens on the property. Returning to the bankruptcy court, Hoopai moved to sell the house free and clear of the liens, with sale proceeds held in escrow and attached by liens if necessary. Countrywide opposed the motion, and asked the court to order Hoopai to release the full amount sought, or, if the court were unwilling to do that, to attach liens to the balance of the sale proceeds. The court granted Hoopai's motion, but ordered that $176,927.72 be released to Countrywide at closing and that the liens attach to the remainder of the proceeds of the sale.

On January 31, 2006, Hoopai and White closed the sale, and Hoopai paid Countrywide $176,927.72, with the remainder of the proceeds held in escrow, in accordance with the court's order.

## D.    The Present Attorneys' Fees Dispute

### 1.    Proceedings Before the Bankruptcy Court

On March 2, 2006, Hoopai filed a motion asking the bankruptcy court to (1) determine Countrywide's entitlement to attorneys' fees; (2) determine Hoopai's entitlement to attorneys' fees; (3) allow Hoopai to execute on the Maluhia super-

sedeas bond; and (4) determine disposition of a rent trust fund in which White's rent payments were held. Only the attorneys' fees disputes, items (1) and (2), are at issue here.

Hoopai argued that Countrywide was not entitled to the full amount of attorneys' fees that it claimed because a significant portion of the fees incurred were outside the scope of the fee provisions in the mortgage agreements, were not for legal services necessary to protect its interests, and were not reasonable under § 506(b) of the Bankruptcy Code. Countrywide responded that it was entitled to the fees under the mortgage agreements, under the court order approving the sale of the property, and under § 506(b); that the fees it demanded were within the scope of the mortgage agreements; and that the fees were all reasonable under § 506(b). After the bankruptcy court announced its tentative ruling that Countrywide was entitled to the full amount sought, Hoopai filed a motion for partial reconsideration in which it argued that Countrywide was not entitled to recover any post-confirmation fees pursuant to § 506(b), and that Countrywide was not entitled to post-confirmation fees under Hawaii law because it was not the prevailing party.

Hoopai also argued that she was entitled to recover from Countrywide and/or Maluhia the fees she had incurred in litigating whether her property was part of the bankruptcy estate, asserting that the dispute was governed by state law, and that, as the prevailing party, she was entitled to attorneys' fees under Hawaii law. After the court announced its tentative ruling that Hoopai was not entitled to recover her attorneys' fees, Hoopai filed a motion for reconsideration asserting that she was entitled to post-confirmation fees from Countrywide as the prevailing party under Hawaii law.

On August 30, 2006, the bankruptcy court issued a memorandum order finding that Countrywide was the prevailing party in its dispute with Hoopai, and was therefore entitled to recover its fees from Hoopai under Hawaii law. It also found

that nearly all of the requested fees were "reasonable," as required by Hawaii law, and awarded Countrywide $83,542.87 in fees. The court further determined that Hoopai was not entitled to any fees from Maluhia because there was no contract between Maluhia and Hoopai.[1]

Hoopai timely appealed to the Bankruptcy Appellate Panel ("BAP").

## 2.    *Proceedings Before the BAP*

On appeal to the BAP, Hoopai argued that the bankruptcy court erred in awarding Countrywide fees incurred post-confirmation, in finding Countrywide's fees "reasonable," and in concluding that Hoopai was not the prevailing party and therefore not entitled to attorneys' fees.

The BAP vacated the bankruptcy court's decision in a published opinion. *In re Hoopai*, 369 B.R. 506 (B.A.P. 9th Cir. 2007). The opinion, focusing on Hawaii law, reasoned that "§ 506(b) does not operate to create a right of attorneys' fees that does not already exist . . . ." *Id.* at 509. The BAP held that the bankruptcy court had erred in determining that Countrywide was the prevailing party under Hawaii law, and reasoned that this determination "so materially changes the overall equation that it is not necessary, and [is] perhaps counterproductive, to determine the other fact-specific issues that have been presented by the appellant." *Id.* at 511. The BAP thus stated that, on remand, the bankruptcy court would need to revisit Hoopai's request for attorneys' fees. *Id.* at 511-12.

Countrywide timely appealed, arguing that it is entitled to

---

[1]The court did not address Hoopai's claim to fees *from Countrywide*. That claim, however, depended on the success of Hoopai's argument that she was the prevailing party and Countrywide the losing party on the "main disputed issue" between the parties, an argument which the court rejected in finding that Countrywide was the prevailing party.

fees pursuant to 11 U.S.C. § 506(b) regardless of state law, or, in the alternative, as the prevailing party under Hawaii law.

## II.   Standard of Review

In an appeal from the BAP, "we independently review the bankruptcy court's decision—reviewing any conclusions of law *de novo*, while reviewing findings of fact for clear error." *In re Reynoso*, 477 F.3d 1117, 1120 (9th Cir. 2007). "We will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *In re Kord Enters. II*, 139 F.3d 684, 686 (9th Cir. 1998); *see also In re Hercules Enters., Inc.*, 387 F.3d 1024, 1027 (9th Cir. 2004).

## III.   Jurisdiction

**[1]** We have jurisdiction over appeals from final orders of the BAP pursuant to 28 U.S.C. § 158(d)(1). We reject Hoopai's contention that the BAP's order is not final because it remanded the case for further fact-finding. Although an order remanding to the bankruptcy court for fact-finding is not considered final when the findings sought are "related to a central issue raised on appeal," an order is final within the meaning of § 158(d) "[i]f the matters on remand concern primarily factual issues about which there is no dispute, and the appeal concerns a question of law." *In re Dawson*, 390 F.3d 1139, 1145 (9th Cir. 2004) (quoting *In re Bankr. Estate of MarkAir, Inc.*, 308 F.3d 1057, 1060 (9th Cir. 2002)) (citations and internal quotation marks omitted). In such case, "the policies of judicial efficiency and finality are best served by our resolving the question now." *Dawson*, 390 F.3d at 1145 (quoting *MarkAir*, 308 F.3d at 1060) (citations and internal quotation marks omitted).

**[2]** The central issues raised in this appeal are (1) whether federal bankruptcy law, rather than Hawaii law, governs Countrywide's claim to attorneys' fees and (2) which party is

the prevailing party under Hawaii law. These issues are primarily legal, and concern undisputed facts. Moreover, the fact-finding directed on remand would not address these issues, as the BAP already decided them by determining that Hawaii law applied and that Hoopai was the prevailing party under state law. Any further fact-finding would focus on whether Hoopai incurred reasonable attorneys' fees for which she is entitled to reimbursement—an inquiry which would be rendered superfluous were we to determine that she was not the prevailing party. The BAP's order is therefore final for the purpose of this appeal, and jurisdiction lies with this court.

## IV.   Governing Law

Both the BAP and the bankruptcy court applied Hawaii law in evaluating Countrywide's claim for attorneys' fees. On appeal, Countrywide does not defend those decisions, but instead argues that its fee claim is governed by § 506(b) of the Bankruptcy Code, and that this provision preempts state law. We agree in part, and hold that § 506(b) governs Countrywide's claim for attorneys' fees incurred prior to confirmation of Hoopai's Chapter 13 plan, and that Hawaii law governs its claim for fees incurred post-confirmation.

### A.   Waiver and Estoppel

As a preliminary matter, we decline to treat Countrywide's argument that § 506(b) governs its claim for fees as waived or barred by the doctrine of judicial estoppel.

[3] Although issues not raised before the BAP are generally considered waived, we have established an exception to this rule "when the issue is one of law and either does not depend on the factual record, or the record has been fully developed." *In re Eliapo*, 468 F.3d 592, 603 (9th Cir. 2006) (quoting *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000))*; see also In re Enewally*, 368 F.3d 1165, 1173 (9th Cir. 2004) (noting that an exception to the waiver rule applies

when "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue below"). The issues raised by Countrywide fit within this exception: whether § 506(b) preempts state law and creates a right to attorneys' fees that is not dependent on state law are questions of law that do not depend on the factual record. Further, because Hoopai herself argued that § 506(b) governed Countrywide's claim to pre-confirmation fees before the BAP, Hoopai cannot be said to have suffered prejudice as a result of Countrywide's failure to do so.[2] Countrywide's argument is therefore not waived.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."

---

[2]The odd procedural history of this issue, in which the parties have seemingly flipped sides, further counsels against treating the issue as waived. Before the bankruptcy court, both Countrywide and Hoopai assumed that § 506(b) governed Countrywide's entitlement to attorneys' fees, at least for some portion of the fees. After the bankruptcy court held that Countrywide was entitled to attorneys' fees *under Hawaii law*, Hoopai argued in her appeal to the BAP that the pre-confirmation fees Countrywide sought should have been evaluated instead under § 506(b), and that the statute preempts state law. Countrywide defended the bankruptcy court's favorable decision, noting that it "ruled, correctly, that § 506(b) does not operate to create a right of attorneys' fees that does not already exist, and, accordingly, focused on the underlying agreements that are governed by Hawaii law." *Cf. In re El Toro Materials Co., Inc.*, 504 F.3d 978, 982 (9th Cir. 2007) (finding that appellant did not waive an argument by failing to raise it in its cross-appeal from the bankruptcy court to the BAP because "the ruling of the bankruptcy court on this issue was entirely favorable to [appellant]" and appellant "had no reason to challenge a favorable decision"). Now that the BAP has determined that Countrywide is not entitled to attorneys' fees under Hawaii law, the parties switch sides, with Countrywide arguing that § 506(b) applies and preempts state law, and Hoopai offering reasons why § 506(b) should not apply. The important point, however, is that the issue was argued before both the bankruptcy court and the BAP, though the parties' positions on the question have varied as their interests have alternately waxed and waned.

*Whaley v. Belleque,* 520 F.3d 997, 1002 (9th Cir. 2008) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996)). It is "an equitable doctrine invoked by a court at its discretion," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)), and "is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Whaley*, 520 F.3d at 1002 (quoting *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004)). "In determining whether to apply the doctrine, we typically consider (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.' " *United States v. Ibrahim,* 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. at 750-51).

**[4]** We decline to apply the judicial estoppel doctrine here, despite Countrywide's adoption of inconsistent positions before the BAP and this court regarding whether § 506(b) or state law governs its claim to fees, because doing so would not serve the purpose of the doctrine. As noted above, the doctrine is intended in large part to "preclude[ ] a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Whaley,* 520 F.3d at 1002 (quoting *Rissetto*, 94 F.3d at 600). Hence, one of the three factors typically considered by courts is "whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.' " *Ibrahim,* 522 F.3d at 1009 (quoting *New Hampshire v. Maine*, 532 U.S. at 750-751). Here, Countrywide does not seek a "second benefit" or "unfair advantage" by reasserting its original argument that § 506(b) governs its claim to attorneys' fees. Countrywide cannot gain a "second benefit," because it did not benefit in

the first instance by defending the bankruptcy court's decision that its fee claim was governed by Hawaii law: the BAP determined that Countrywide was not entitled to *any* fees under Hawaii law. More importantly, because Hoopai herself argued before the BAP that § 506(b) preempts state law, allowing Countrywide to make this argument here can hardly be said to "impose an unfair detriment" on her. *Ibrahim,* 522 F.3d at 1009.

We therefore proceed to consider the merits of Countrywide's argument that § 506(b) preempts state law and governs its claim to attorneys' fees.

**B.   The Relationship Between § 506(b) and State Attorneys' Fees Law**

*1.   Preemption*

Both the bankruptcy court and BAP proceeded from the premise that § 506(b) does not create a right of attorneys' fees that does not already exist pursuant to state law, and thus focused on whether Countrywide had a right to attorneys' fees under state law. This was error; our case law has firmly established that § 506(b) entitles oversecured creditors to enforce contractual attorneys' fees provisions and preempts state law on attorneys' fees.

Section 506(b) of the Bankruptcy Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, *there shall be allowed* to the holder of such claim, interest on such claim, and *any reasonable fees, costs, or charges provided for under the agreement* under which such claim arose.

11 U.S.C. § 506(b) (2000) (amended 2005) (emphasis added).³

**[5]** The statute, by its terms, states that an oversecured creditor, such as Countrywide, "shall be allowed . . . any reasonable fees, costs, or charges provided for under the agreement." *Id.* Thus a "creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." *In re Kord Enters. II*, 139 F.3d 684, 687 (9th Cir. 1998). Hoopai does not dispute that Countrywide's claim is an "allowed, secured claim" for which Countrywide is oversecured. Because the mortgage agreements between Countrywide and Hoopai included broad attorneys' fee provisions, and Hoopai has not appealed the bankruptcy court's finding that "Countrywide's fees are within the scope of the fee provisions," § 506(b) entitles Countrywide to an award of reasonable fees as part of its secured claim.

**[6]** Countrywide's entitlement to attorneys' fees under § 506(b) is not limited by state law. In *In re Kord Enterprises II*, we squarely rejected the argument endorsed by the BAP here that because § 506(b) only authorizes the payment of fees provided for under a loan agreement, and loan agreements are interpreted under state law, state law must therefore govern any award of attorneys' fees. 139 F.3d at 688. Reasoning that (1) "§ 506(b) does not reference state law," (2) "the legislative history of § 506(b) suggests that Congress considered and rejected the idea that fees should be subject to state law,"⁴ and (3) precedent interpreting § 506(b) as preempting

---

³In 2005, § 506(b) was amended to include the words "or State statute" following "agreement." 11 U.S.C. § 506(b) (2006) (as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005)). However, this amendment does not apply to cases commenced before October 17, 2005, and thus does not apply to this case, which was commenced in 2004. BAPCPA § 1501, 119 Stat. 216.

⁴In *Kord*, we observed that while the House's version of the statute allowed fees "to the extent collectible under applicable law," H.R. 8200,

state law remained good law, *Kord* held that "§ 506(b) pre-empts state law." *Id.* at 688-89 (citing *In re 628 Ltd.*, 789 F.2d 674, 675 (9th Cir. 1986)). Because *Kord* remains good law, at least with respect to the version of § 506(b) in effect prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[5] the bankruptcy court erred in concluding that Countrywide's claim to attorneys' fees under § 506(b) was limited by state law.[6]

## 2.   *Temporal Scope*

Finally, we must address the temporal scope of § 506(b), specifically, the date at which § 506(b) ceases to govern the fees incurred by an oversecured creditor. Hoopai argues that § 506(b) applies, at most, to the fees Countrywide incurred prior to confirmation of her Chapter 13 plan, and does not

95th Cong. (1977), the enacted version dropped this language. 139 F.3d at 689. The floor managers of the bill reported that this language had been rejected by the committee, and that under the enacted version "[i]f the security agreement between the parties provides for attorneys' fees, it will be enforceable under title 11, notwithstanding contrary law . . . ." *Id.* (quoting 124 Cong. Rec. 32,350, 32,398, 33,989, 33,997 (1978)).

[5]Whether *Kord*'s holding is applicable to the current version of § 506(b), as amended by the BAPCPA, is not before us.

[6]Hoopai argues for the first time on appeal that even if the bankruptcy court and the BAP erred in concluding that § 506(b) *always* requires courts to apply state law to determine whether an oversecured creditor is entitled to attorneys' fees, the courts nonetheless reached the right result because 11 U.S.C. § 1322(e) supersedes application of § 506(b) in this case and directs the court to look to state law. Section 1322(e) provides that "[n]otwithstanding . . . section[ ] 506(b) . . . , the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Hoopai asserts that she provided for a cure of the arrearages with Countrywide in her bankruptcy plan, and argues that § 1322(e)'s limitation on the amount needed to cure default "extends to attorney fees and other costs as well" quoting *In re Tudor*, 342 B.R. 540, 567-68 (Bankr. S.D. Ohio 2005). Because Hoopai had ample opportunity to raise this argument before the bankruptcy court and the BAP and failed to do so, we conclude that it is waived.

govern the significant post-confirmation fees Countrywide seeks. Countrywide contends that § 506(b) governs the fees incurred at least until the "effective date" of the Chapter 13 plan, which it asserts was the date on which the sale of the property occurred—nearly a year after the plan was confirmed.

**[7]** The temporal scope of § 506(b) is an issue of first impression for this circuit. However, the Supreme Court has remarked on the scope, albeit in dicta, and every circuit that has addressed the issue has followed the Court's statement that § 506(b) governs fees only "until the confirmation or effective date of the plan." *Rake v. Wade*, 508 U.S. 464, 471 (1993), *superseded on other grounds by* 11 U.S.C. § 1322(e); *see also Rake*, 508 U.S. at 468; *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1338-39 (11th Cir. 2000); *In re Milham*, 141 F.3d 420, 425 (2d Cir. 1998); *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 797 (5th Cir. 1997); *Landmark Fin. Servs. v. Hall*, 918 F.2d 1150, 1155 (4th Cir. 1990); *see also In re Joubert*, 411 F.3d 452, 454 (3d Cir. 2005) (noting in dicta that "[s]ection 506(b) allows oversecured creditors to add reasonable post-petition, pre-confirmation attorney fees, interest, and costs to the amount of their secured claim"). The BAP has also held that § 506(b)'s application ends at confirmation. *See generally In re Laguna*, 114 B.R. 214, 215 (B.A.P. 9th Cir. 1990). We agree.

In addition to the force of the Supreme Court's statement, two lines of reasoning support the conclusion that the applicability of § 506(b) ends at a plan's confirmation or "effective date" despite the lack of an explicit temporal limitation in the statute. First, because § 506(b) establishes an oversecured creditor's entitlement to receive certain post-petition interest and fees, and because a confirmed plan establishes the scope of all claims against the debtor, courts that have addressed this issue have concluded that new fees, incurred after confirmation, fall outside the scope of § 506(b). *See Rake*, 508 U.S. at 468 ("Respondent concedes . . . that because § 506(b) has

the effect of allowing a claim to the creditor, . . . the rights granted under § 506(b) are relevant only until confirmation of the plan." (citations and internal quotation marks omitted)); *In re Milham*, 141 F.3d at 423 (noting that "[a]n oversecured creditor . . . is entitled to receive postpetition interest as part of its claim at the time of confirmation of a plan" (quoting *In re Delta Res., Inc.*, 54 F.3d 722, 729 (11th Cir. 1995)), and concluding that "[s]ection 506(b) thus defines the allowed claim of an oversecured creditor"); *Telfair*, 216 F.3d at 1339 ("[A] contrary result would be inconsistent with the purpose of section 506(b), which allows oversecured creditors to include post-petition interest and certain fees as part of the secured claim they will receive upon confirmation of the plan.").

Second, because § 1325(a) provides secured creditors with a different right to interest from the "effective date of the plan" through payment,[7] § 506(b) would seem to conflict with § 1325(a) if both were to apply during the same time period.[8] Thus, in *In re Milham*, the Second Circuit reasoned "we prefer an interpretation of section 506(b) that accommodates section 1325, and we believe one is readily available," holding that "[s]ection 506(b) . . . defines the allowed claim of an oversecured creditor; treatment of that claim *after confirma-*

---

[7]*See In re Milham*, 141 F.3d at 424 ("We have previously determined that interest under § 1325(a)(5)(B)(ii) 'should be fixed at the rate on a United States Treasury instrument with a maturity equivalent to the repayment schedule under the debtor's reorganization plan . . . [but] should also include a premium to reflect the risk to the creditor in receiving deferred payments under the reorganization plan.' " (quoting *In re Valenti*, 105 F.3d 55, 64 (2d Cir. 1997) (internal citations and quotation marks omitted))).

[8]Although § 1325(a)(5)(B)(ii) "does not mention the term 'discount rate' or the word 'interest,' " the statutory requirement that payments over the life of the plan have a " 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secure claim" creates a right to interest. *Till v. SCS Credit Corp.*, 541 U.S. 465, 473-74 (2004) (plurality opinion).

*tion* is governed by Section 1325 . . . .” 141 F.3d at 423 (emphasis added).

In arguing that § 506(b) governs its entitlement to post-confirmation fees, Countrywide does not address these arguments, or provide persuasive reasons to break with the many decisions holding that § 506(b) governs only those fees incurred prior to confirmation.[9] Rather, Countrywide attempts to reconcile its position with *Rake* and its progeny by asserting that Hoopai’s plan did not become “effective” until the sale of the property to White occurred, and that the temporal scope of § 506(b) is limited by the “effective” date rather than the date of confirmation.[10]

We reject this argument. Even assuming § 506(b) governs until the “effective date,” rather than the confirmation date, Countrywide has not provided any reason to conclude that the two dates differ here. Although the Bankruptcy Code does not define the phrase “effective date of the plan,” the “most logical interpretation,” and that endorsed by the courts and commentators that have addressed the issue, is that the effective date is the date the plan becomes binding on the parties. *See In re Pak*, 378 B.R. 257, 265 (B.A.P. 9th Cir. 2007) (“[T]he most logical interpretation of the ‘effective date of the plan’ is the date of plan confirmation, as a chapter 13 plan is not binding on the debtor and other interested parties until it is confirmed.”), *abrogated on other grounds by In re Kagenveama*, 541 F.3d 868, 874-75 (9th Cir. 2008); *In re Lanning*, 545 F.3d 1269, 1279 (10th Cir. 2008) (same); *In re Wilson*,

---

[9]Countrywide cites to a single case that supports its view that a creditor is entitled to fees incurred post-confirmation under § 506(b): *In re Calzaretta*, 35 B.R. 92, 94 (Bankr. N.D. Ill. 1983). However, that case was decided prior to *Rake*, and only considered whether post-confirmation fees are per se “unreasonable” under § 506(b). Whether or not such fees are *reasonable* is not at issue here; rather, the question is whether § 506(b) applies at all following confirmation of a Chapter 13 plan.

[10]Notably, all of the fees at issue in this case were incurred before the sale to White was completed.

397 B.R. 299, 313 (Bankr. M.D. N.C. 2008) (same); *In re Fleishman*, 372 B.R. 64, 70-74 (Bankr. D. Or. 2007) (reviewing the statutory context, legislative history, dictionary definition of "effect," and case law, and concluding that "it is most logical to interpret the term 'effective date of the plan' . . . to mean the date that the plan is confirmed"). This may be a date specifically provided for in a Chapter 13 plan, but when no such date is selected, the effective date is the date on which the plan becomes final and binding due to a court order confirming the plan.[11] *See In re Pak*, 378 B.R. at 265; *In re Fleishman*, 372 B.R. at 70-74; 8 *Collier on Bankruptcy* ¶ 1325.06[3][b][i] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009); Kenneth N. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 Am. Bankr. L.J. 551, 560 (1995) (noting that the Bankruptcy Code does not define the term "effective date," and recommending the enactment of a provision defining the term "to be the date on which the provisions of a plan . . . become effective and binding on the parties," which may be the date of confirmation or some other date established by the parties).

[8] Countrywide does not contend that Hoopai's Chapter 13 plan specifically provided for an effective date, and no such provision is apparent from the record. We therefore conclude that the effective date of Hoopai's plan was the date of confirmation: February 23, 2005. Section 506(b) thus governs Countrywide's claim to fees incurred prior to that date; on remand, the bankruptcy court should award Countrywide "reasonable" pre-confirmation fees pursuant to § 506(b). We note that in applying the "reasonableness" limitation of § 506(b), the court must apply federal standards.[12] *See In re*

---

[11]This interpretation draws support from § 1327 of the Bankruptcy Code, entitled "Effect of Confirmation," which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a). The provision thus makes clear that the effect of confirmation is to make the plan binding on the debtor and creditors.

[12]In light of our determination that § 506(b) governs Countrywide's claim to pre-confirmation fees, we do not address Hoopai's argument that the bankruptcy court abused its discretion in determining that the fees sought by Countrywide were "reasonable" under Hawaii Revised Statutes section 607-14.

*268 Ltd.*, 789 F.2d 647, 677-78 (9th Cir. 1986); *see also* 4 *Collier on Bankruptcy* ¶ 506.04[3][a][ii] (noting that in applying § 506(b), "reasonableness is to be determined in accordance with federal standards").

But while § 506(b) governs Countrywide's claim to preconfirmation fees, Hawaii law governs its claim to fees incurred following confirmation. We therefore must review the bankruptcy court's determination that Countrywide was entitled to fees as the "prevailing party" under Hawaii law.

## V.    Prevailing Party Analysis

**[9]** Under Hawaii law, a "prevailing party" is entitled to collect reasonable attorneys' fees pursuant to a contractual attorneys' fee provision. Haw. Rev. Stat. § 607-14.[13] In determining which party is the prevailing party in complex litigation, Hawaiian courts focus on which party prevailed on the "disputed main issue." *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 575 P.2d 869, 879 (Haw. 1978). The "disputed main issue," in turn, is identified by looking to "the principal issues raised by the pleadings and proof in a particular case . . . ." *Fought & Co., Inc. v. Steel Eng'g & Erection, Inc.*, 951 P.2d 487, 503 (Haw. 1998) (quoting *MFD Partners v. Mur-*

---

[13]Section 607-14 provides, in relevant part:

> [I]n all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, *to be paid by the losing party* and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing *the prevailing party* shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party . . . .

Haw. Rev. Stat. § 607-14 (emphasis added).

phy, 850 P.2d 713, 716 (Haw. Ct. App. 1992)). Thus, the "prevailing party" is the party that succeeds on the issue or issues that are (1) the "principal" issues raised in the litigation and (2) disputed by the parties.

Here, the bankruptcy court and BAP disagreed regarding what constituted the "disputed main issue," and subsequently, which party prevailed. The bankruptcy court determined that the "disputed main issue" between Countrywide and Hoopai "was enforcement of Countrywide's liens and payment of Countrywide's secured claim." Because the liens were enforced and the claim paid, the bankruptcy court concluded that Countrywide was the prevailing party, and thus entitled to attorneys' fees. On appeal, the BAP held that this determination was "clearly erroneous," concluding that the disputed main issue "was whether Hoopai would be allowed to complete her $300,000 sale" and that because Hoopai was allowed to do so, "[s]he plainly was the prevailing party." We conclude that the BAP was correct, and find that the bankruptcy court clearly erred in determining that Countrywide was the prevailing party.

While ensuring payment may have been the motivation behind Countrywide's legal efforts, Countrywide's entitlement to payment was never an issue *in dispute* in the proceedings between the parties. Hoopai never denied that she had defaulted on her loans and that Countrywide was entitled to repayment in full as an oversecured creditor. Countrywide conceded as much before the bankruptcy court, writing in a statement of "undisputed facts" that "Hoopai does not dispute the default of Hoopai's loan" but "disputes that [the] foreclosure auction and sale divests the Property of her bankruptcy estate."

[10] Rather, the overarching disagreement between the parties concerned *how* payment would be made, with Countrywide pushing for recognition of its foreclosure sale to Maluhia, and Hoopai seeking to sell the property to White and

to pay Countrywide from the proceeds. The principal dispute that emerged from the pleadings and motions was whether the foreclosure sale extinguished Hoopai's interest in the property, such that the property was no longer part of the bankruptcy estate and could not be sold to White. Countrywide argued that the foreclosure sale had extinguished Hoopai's interest, and on this basis: (1) moved for relief from the automatic stay so that the foreclosure sale could be completed; (2) opposed confirmation of Hoopai's Chapter 13 plan; and (3) opposed Hoopai's motion for approval to sell the property to White. Hoopai vigorously disputed this argument. We agree with Hoopai and the BAP that the "principle issues raised by the pleadings and proof" were whether Hoopai retained her interest in the property following the foreclosure auction, and whether she should be allowed to sell the house to White.

[11] Hoopai was the prevailing party on these main disputed issues. The bankruptcy court agreed with Hoopai that her interest in the property had not been extinguished by the foreclosure auction, and the court therefore denied Countrywide's motion for relief from the stay, granted Hoopai's motion for approval of the sale to White, and confirmed Hoopai's Chapter 13 plan. Because Hoopai prevailed on these issues, she was the "prevailing party" under section 607-14.

Countrywide also suggests briefly that if § 506(b) governs its claim to pre-confirmation fees, then Hoopai is the prevailing party for purposes of fees under section 607-14 only if she prevailed in the principal *post-confirmation* dispute between her and Countrywide. Countrywide, however, cites no authority that supports the proposition that a case can or should be sliced into temporal segments in applying Hawaii's prevailing party analysis, and doing so would conflict with the edict to consider only the "principal issues" in a case "and then determine, on balance, which party prevailed on th[ose] issues." *Village Park Cmty. Ass'n v. Nishimura*, 122 P.3d 267, 283 (Haw. Ct. App. 2005) (quoting *MFD Partners*, 850 P.2d at 715-16); *see also In re Anderson,* 49 B.R. 725, 730 (Bankr.

D. Haw. 1985) (noting that the Hawaii "prevailing party rule requires that litigation be viewed in its entirety for the purpose of determining entitlement to attorney's fees" and that Hawaii courts do "not bifurcate or apportion attorney's fees on the basis of individual motions or issues").

Moreover, even assuming that Hawaii law permits us to focus only on subsidiary post-confirmation issues, rather than the principle issue regarding the effect of foreclosure, our conclusion would remain the same, as Hoopai prevailed, on balance, in the post-confirmation disputes. Two disputes occupied the parties post-confirmation: Maluhia's appeal of the bankruptcy court's determination regarding the effect of the foreclosure sale, and Hoopai's attempt to have Countrywide's liens released from the property so that she could complete the sale to White. With regard to the first dispute, Hoopai prevailed over Maluhia; Countrywide was not a party to the litigation, though it incurred legal fees "monitoring" the appeal. The second dispute centered on how much money Hoopai would have to release to Countrywide for the creditor to release its liens on the property: Hoopai offered to release approximately $158,000, with the disputed amount in escrow and potentially attached by the liens; while Countrywide demanded $236,317.65 to release the liens. The bankruptcy court granted Hoopai's motion to sell the house free of the liens, but ordered escrow to release approximately $177,000 and ordered that the liens attach to the proceeds of the sale. Thus the court did not fully satisfy either party, but on balance, its order more closely aligned with the resolution sought by Hoopai, as she was permitted to sell the house free of the liens and to leave the majority of the disputed amount in escrow.

**[12]** In sum, the bankruptcy court clearly erred in determining that Countrywide was the "prevailing party" under Hawaii law. Because we conclude that Hoopai was the prevailing party, Countrywide is not entitled to post-confirmation fees.

Further, on remand, the bankruptcy court should reconsider Hoopai's request for attorneys' fees under section 607-14.

## VI.    Conclusion

Section 506(b) governs an oversecured creditor's entitlement to attorneys' fees incurred prior to confirmation of a Chapter 13 plan and preempts state law; both the bankruptcy court and the BAP therefore erred in analyzing Countrywide's claim to pre-confirmation fees under Hawaii's attorneys' fee statute. We further conclude that the BAP correctly determined that Hoopai was the prevailing party under Hawaii Revised Statutes section 607-14, and that the bankruptcy court clearly erred in determining that Countrywide was the prevailing party. We therefore reverse the BAP opinion in part, affirm it in part, and vacate the bankruptcy court's order. We remand for the award of attorneys' fees to Countrywide pursuant to § 506(b) up to the date of plan confirmation, and for reconsideration of Hoopai's request for post-confirmation fees.

**VACATED and REMANDED.**